## Hartford Federal Savings and Loan Association v. The Aetna Casualty and Surety Company

Superior Court     Hartford County     File No. 134000

Memorandum filed December 1, 1964

*Ribicoff & Kotkin,* of Hartford, for the plaintiff.

*Elmer W. Beasley,* of Hartford, for the defendant.

MacDonald, J. Plaintiff bank brought this action against the defendant bonding company seeking indemnity under a standard form savings and loan blanket bond for a loss it claims to have sustained when it was required to reimburse the United States treasury department $7301.60, representing the redemption value of nine $1000 United States series E savings bonds which had been stolen and which plaintiff bank paid to an impostor who forged a request of the registered owner for payment. The following pertinent facts are either admitted in the pleadings or established by documents in the file and are undisputed.

On June 1, 1947, defendant executed and delivered to plaintiff bank its savings and loan blanket bond, standard form No. 22, revised to June 1, 1947, originally for $100,000 but which was increased from time to time by increase riders until the amount of indemnity was increased to $1,000,000 as of September 16, 1955. It was amended by a discovery rider, attached thereto, and made a part thereof, as of September 27, 1954, to change it from a "loss sustained" bond to a "loss discovered" bond. A duplicated copy of said bond, together with all riders attached thereto and made a part thereof to form the contract between plaintiff and defendant, is attached to defendant's answer as exhibit A. The provisions of said bond, as amended by the discovery rider, which are pertinent to the issues involved are as follows:

"In consideration of an agreed premium . . . Underwriter hereby undertakes and agrees to indemnify and hold harmless . . . Insured . . . from and against any losses sustained by the

Insured at any time but *discovered after noon on the 27th day of September, 1954, and prior to the termination or cancellation of this bond as an entirety, as hereinafter set forth, or by mutual agreement.* [Italics supplied.]

### "Forgery or Alteration

"2. Any loss through forgery or alteration of, on or in any instrument.

### "Fraud

"5. Any loss of property through any other form of fraud or dishonesty by any person or persons, whether Employees or not.

### "Redemption of United States Savings Bonds

"7. Any loss through paying or redeeming any United States Savings Bonds, Series A to E, inclusive, . . . which shall have been forged, counterfeited, raised or otherwise altered, or lost or stolen.

### "The Foregoing Agreement is Subject to the Following Conditions and Limitations:

### "Loss-Notice-Proof-Legal Proceedings

"Section 4. *At the earliest practicable moment after discovery of any loss hereunder the Insured shall give the Underwriter written notice thereof* and shall also *within six months after such discovery furnish to the Underwriter affirmative proof of loss* with full particulars. *Legal proceedings for recovery of any loss hereunder shall not be brought* prior to the expiration of sixty days after such

proof of loss is filed with the Underwriter nor *after the expiration of twenty-four months from the discovery of such loss . . . .* If any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law. [Italics supplied.]

. . . . .

## "TERMINATION

"Section 12. This bond shall terminate in its entirety—(a) at noon upon the effective date specified in a written notice served by the Underwriter upon the insured, . . . or (b) upon receipt by the Underwriter of a written request from the Insured to terminate this bond. . . . The Underwriter shall, on request, refund to the Insured the unearned premium computed pro rata if this bond is terminated . . . by notice from or at the instance of the Underwriter . . . ."

On July 19, 1960, plaintiff was an authorized paying agent of the United States treasury department, and on that date a person posing as Ernest Cataldo opened savings account No. 6-457 at plaintiff's Park Street office in the name of "Ernest Cataldo" by depositing $40, and on July 28, 1960, he made another $10 deposit. At the time of the deposit, plaintiff did not require the depositor to establish his positive identification.

On August 1, 1960, the person posing as Ernest Cataldo presented to plaintiff's Park Street office nine $1000 United States savings bonds, series E, which were registered in the name of Ernest Cataldo, and requested payment. Upon signing the request for payment in the name of Ernest Cataldo, plaintiff paid the person standing before it the

redemption value of said bonds, which was $7301.60, and the only means of identification of the person was savings account No. 6-457, which was entered on the back of each bond. Plaintiff then sent the bonds to the treasury department for cancelation and was reimbursed in the amount it paid out.

By letter dated November 14, 1960, the treasury department wrote plaintiff that the bonds had been lost or stolen, and attached a schedule showing the serial numbers of six of the bonds, the issue date, the name of the paying agent, the date paid, and the amount paid. Then, the letter specifically stated the following: "Since our records show that your institution paid the bonds this notice is transmitted in order: (1) to acquaint you with the possibility of an erroneous payment having been made . . . (3) *to enable you to notify your bonding company of the matter* and to take such other action as you may consider desirable. . . . This notice does not constitute a claim for reimbursement. You will be informed of the result of the Department's investigation. . . . P.S. Evidence showing the date of death of Ernest Cataldo as June 19, 1959, is on file in this office." [Italics supplied.]

By letter dated January 18, 1961, the treasury department wrote plaintiff, and referred to the earlier letter of November 14, 1960, and notified plaintiff that three additional bonds, which were described in a schedule attached, had also been paid by plaintiff on August 1, 1960, which were registered in the name of Ernest Cataldo as owner or coowner. By letter dated December 18, 1962, the treasury department referred to the two previous letters it had written to plaintiff respecting plaintiff's payment of the nine $1000 series E savings bonds registered in the name of Ernest Cataldo either as owner or coowner, and then the letter stated the

following: "The investigation conducted by the Department discloses that: (1) Ernest Cataldo died June 19, 1959; (2) the bonds were stolen and paid on forged requests for payment to an impostor whose identity has not been established; (3) on July 19, 1960, a person posing as Ernest Cataldo opened Savings Account No. 6-457 in your association in the name of Ernest Cataldo by depositing $40, and on July 28, 1960, deposited another $10 in the account; (4) the bonds were paid August 1, 1960, on the strength of the savings account, and the notation '6-457' was placed on each bond. . . . The Department does not consider that the savings account was a reliable means of identification in view of the fact that it was opened only thirteen days prior to payment of the bonds and the fact that apparently adequate identification was not required in opening the account. In this connection your attention is called to paragraph 3 (6) of the statement issued to paying agents by the Department on December 19, 1947, which requires in the case of a customer of a paying agent that the account has been established for six months or longer, or that the customer's identity was required to be established beyond any reasonable doubt at the time the account was opened. Under the circumstances, your association cannot be relieved from liability for the loss resulting from this erroneous payment. . . ." The letter contained a demand for reimbursement in the amout of $7301.60.

By letter dated December 27, 1962, addressed by plaintiff to Robert Falck, vice president of Bent and Bent, Inc., Wallace A. Davis, plaintiff's vice president and treasurer, referred to a telephone conversation of that date and enclosed duplicated copies of the three letters received from the treasury department, with the comment that the letters would fully explain the circumstances surrounding

the cashing of the bonds. That letter contains this significant sentence: "Will you kindly use this as your authorization to present a claim to the Aetna Casualty and Surety Company in the amount of $7,301.60." On December 27, 1962, or subsequent thereto, and before January 4, 1963, R. H. Falck, of Bent and Bent, Inc., sent a memorandum to defendant's branch office to report the claim, which stated that the date of loss was August 1, 1960, and attached to the memorandum the three letters from the treasury department and the letter of December 27, 1962, from plaintiff to Bent and Bent, Inc. At the bottom of the memorandum, under "Date of Notice," Bent and Bent, Inc., through Falck, wrote in longhand "12-27-62."

Defendant's bond was terminated or canceled as of March 7, 1962, by mutual agreement of the parties, and, upon plaintiff's request, defendant refunded to plaintiff, through Bent and Bent, Inc., the net unearned premium which had been paid on said bond for a period ending October 31, 1962; which net return premium appears as a credit of $1458.05 in the agent's monthly premium statement issued by defendant to Bent and Bent, Inc., for the month of March, 1962, which is attached to the affidavit in support of defendant's motion for summary judgment as an exhibit. Defendant was informed by Bent and Bent, Inc., that another insurance company had written a similar bond for plaintiff which became effective March 7, 1962, which information was the basis for designating March 7, 1962, as the date of termination or cancelation of defendant's bond (see affidavit annexed to defendant's motion for summary judgment).

The complaint alleged in general terms the execution and delivery of the bond, as originally written; it quoted insuring clauses 2 and 5; the receipt of

the letters from the treasury department, dated November 14, 1960, and January 18, 1961, notifying plaintiff of its payment of the bonds; the communication of the contents of the letters to Bent and Bent, Inc.; the treasury department's demand for payment dated December 18, 1962; and the filing of claim against defendant on December 27, 1962.

By its answer, defendant admitted the execution of the bond, and alleged the amendments which had been made by riders attached thereto, attached a copy of the bond and riders as exhibit A, admitted the allegations respecting the treasury department's notification to plaintiff, denied that any notice had been given in 1960, and then set up four special defenses which challenged plaintiff's right to recover because it did not comply with the conditions precedent to a right of recovery: (1) by failing to give notice within the period required by the bond; (2) by failing to file a proof of loss within the time required by the bond; (3) by not bringing the action within the time limited in the bond; and (4) in the alternative, in that it did not discover the loss prior to the termination of the bond, which was itself a condition precedent to coverage. Defendant attached as exhibits to its special defenses the three letters written by the treasury department to plaintiff, the letter written by plaintiff to Bent and Bent, Inc., and the memorandum written to defendant by Bent and Bent, Inc., which exhibits set forth all material facts of the case. Plaintiff filed a reply to defendant's special defenses in which it admitted the facts set forth in the exhibits and itself set up as a special reply a six-year Statute of Limitations. Defendant in turn filed a reply to plaintiff's special reply which denied the allegations set forth in said special reply.

After a study of the pleadings, the exhibits contained in the file and defendant's carefully prepared

motion and supporting affidavit, there appears to be
no genuine issue as to any material fact, and under
§§ 297–303 of the Practice Book this seems
clearly to entitle defendant to judgment if such
result is warranted as a matter of law. Section 303
is modeled after Rule 56 (c) of the Federal Rules
of Civil Procedure, quoted by the court in *Boyce* v.
*Merchants Fire Ins. Co.*, 204 F. Sup. 311 (D. Conn.
1962), an action by an agent of an insurance com-
pany against the company for damages for an
alleged wrongful termination of a contract, wherein
the defendant moved for summary judgment, as
here, on the ground that the pleadings, depositions,
exhibits and affidavits showed no genuine issue as to
any material fact. In granting summary judgment,
District Judge Anderson uses the following lan-
guage (pp. 313, 314): "(1) Rule 56 (c) of the Fed-
eral Rules of Civil Procedure, 28 U.S.C.A. pro-
vides: '. . . The judgment sought shall be ren-
dered forthwith if the pleadings, depositions, and
admissions on file, together with the affidavits, if
any, show that there is *no genuine issue* as to any
material fact and that the moving party is entitled
to a judgment as a matter of law.' [Italics supplied.]
Paragraph (d) of the rule similarly speaks of
material facts which 'are actually and in good faith
controverted.' This language clearly shows that to
defeat summary judgment there must appear an
issue of fact not only material but genuine as well.
. . . It is not enough that one opposing a motion
claims there is a genuine issue of material fact;
some evidence showing the existence of such an
issue must be presented. The movant has the burden
of showing the non-existence of such issues but the
evidence thus presented, if otherwise sufficient, is
not rebutted by the bald statement that an issue of
fact does exist." This language seems particularly
applicable to the instant situation, where defend-

ant's answer and four special defenses allege specific facts documented by attached exhibits whose existence and genuineness are admitted by plaintiff's reply thereto. As such, there are judicial admissions conclusive upon the plaintiff of all facts therein stated. *Bridgeport* v. *Stratford,* 142 Conn. 634, 646.

On the other hand, plaintiff's opposing affidavit is made largely "on advice of counsel" rather than upon the personal knowledge of affiant and attempts to rest upon the allegations and denials in plaintiff's pleadings without setting forth any facts to show that a genuine issue of fact is presented for trial. As stated by Judge Anderson in the above quotation from the *Boyce* case, "[i]t is not enough that one opposing a motion claims there is a genuine issue of material fact; some evidence showing the existence of such an issue must be presented." See also *Rathkopf* v. *Pearson,* 148 Conn. 260; *Engl* v. *Aetna Life Ins. Co.,* 139 F.2d 469, 472 (2d Cir.).

With respect to the questions of law raised by the facts as established, the court has reached the following conclusions.

I

The provision in the bond that the "Insured shall give the Underwriter notice of any loss at the earliest practicable moment after discovery thereof" is a condition precedent to the insured's recovery, and plaintiff's failure to give defendant notice of the loss within the time required by the bond precludes a recovery. *Silver* v. *Indemnity Ins. Co.,* 137 Conn. 525; *Fields* v. *Metropolitan Life Ins. Co.,* 132 Conn. 588, 592; *Mutual Industrial Finance Corporation* v. *American Surety Co.,* 119 Conn. 270; *McKee* v. *American Casualty Co.,* 316 F.2d 428 (5th Cir.), cert. denied, 375 U.S. 830; *Muncie Banking Co.* v. *American Surety Co.,* 200 F.2d 115 (7th Cir.); *Preferred*

*Accident Ins. Co.* v. *Grasso,* 186 F.2d 987 (2d Cir.); *Mount Vernon Bank & Trust Co.* v. *Aetna Casualty & Surety Co.,* 224 F. Sup. 666 (D. Va.); *St. Paul Fire & Marine Ins. Co.* v. *Bank of Stockton,* 213 F. Sup. 716 (N.D. Cal.); *Peerless Hosiery Co.* v. *Northern Ins. Co.,* 108 F. Sup. 52 (D. Conn.), aff'd, 199 F.2d 957 (2d Cir.).

In *Mutual Industrial Finance Corporation* v. *American Surety Co.,* supra, the bond provided that notice should be given within ten days after discovery of any loss, but the insured did not give notice until it had completed its investigation and the amount of the loss had been determined. In denying a recovery, the court said (p. 274): "The purpose of the requirement of notice within ten days of the discovery of loss is to enable the surety to make investigation and to take the necessary steps to indemnify and protect itself. It contemplates notice within ten days after the discovery of dishonest acts of the employee which may subject the employer to loss within the terms of the policy. . . . Detailed information as to the extent of the loss is not necessary to place upon the employer the duty to give the additional notice required by the bond. . . . The giving of a notice of loss, as distinguished from the proofs of loss, within ten days after the ascertainment by investigation of the actual amount of loss sustained, is not a sufficient compliance with the terms of the policy, if such notice is not given within ten days after the discovery of the dishonest acts of the employee which occasioned the loss." The insurer is not required to show that it has been prejudiced by a failure to give the notice within the time required in the policy. *Preferred Accident Ins. Co.* v. *Castellano,* 148 F.2d 761 (2d Cir.).

The duty arises to give notice when facts develop which will suggest to a person of ordinary and rea-

sonable prudence that liability may have been incurred. In *Mount Vernon Bank & Trust Co.* v. *Aetna Casualty & Surety Co.*, supra, the notice provisions of the bond were identical with the notice provisions in the bond involved here, and the action was brought to recover a loss sustained by the bank on account of its wrongful payment of the proceeds of United States savings bonds to an impostor who forged the request of the registered owner for payment. The bank discovered the loss about August 1 but did not notify the insurer until the following April. In holding that the bank could not recover, the court uses this significant language (p. 670): "The word 'loss' as used in this condition means the date the fraud was discovered by the bank—not the date the bank was called upon to make the loss good. It appears to be well settled . . . that the word 'loss' refers to a condition in which the insured would be subjected to a claim or demand 'out of which a legal liability might arise; and not to an adjudicated liability."

Here, the treasury department notified plaintiff on November 14, 1960, that the bonds in question had been lost or stolen and that plaintiff had paid the bonds. That letter stated specifically that "this notice is transmitted in order: (1) *to acquaint you with the possibility of an erroneous payment* having been made, (2) to enable you to assemble all known information concerning the payment . . . , and (3) *to enable you to notify your bonding company of the matter* and to take such other action as you may consider desirable" (italics supplied). That same letter notified plaintiff that Ernest Cataldo, the registered owner or coowner of the bonds, had died on June 19, 1959. The treasury department's letter of January 18, 1961, reiterated the same notice with respect to three of the bonds. Plaintiff thus discovered the loss when facts developed which would

suggest to a person of ordinary and reasonable prudence that liability may have been incurred. As the court said in *Mount Vernon Bank & Trust Co. v. Aetna Casualty & Surety Co.,* supra, 670, within the meaning of §4 of the bond requiring notice at the earliest practicable moment upon discovery of loss, "[t]he word 'loss' . . . means the date the fraud was discovered by the bank—not the date the bank was called upon to make the loss good," and "the word 'loss' refers to a condition in which the insured would be subjected to a claim or demand 'out of which a legal liability might arise,' and not to an adjudicated liability." And our Supreme Court said, in *Mutual Industrial Finance Corporation v. American Surety Co.,* supra, 274, that it is "the discovery of dishonest acts . . . which may subject" the insured "to loss within the terms of the policy" that raises a duty on the part of the insured to give the notice required by the bond.

Here there was a delay of more than two years between the date plaintiff discovered the loss and the date of its notice to defendant. This cannot, by the widest stretch of the imagination, be considered as "the earliest practicable moment after discovery of the loss," and recovery is precluded as alleged in defendant's second special defense.

## II

Section 4 of the bond, after providing for written notice at the earliest practicable moment, further provides as a condition precedent to insurer's liability that the insured "shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars." Obviously, plaintiff failed to perform this condition on the facts stated above, and, under the authorities cited in the discussion of point I, is barred from recovery on this ground also.

## III

Plaintiff bank brought this action more than twenty-four months after its discovery of the loss and thus failed to perform a third condition precedent to its recovery from defendant, for defendant's liability is expressly conditioned on the action for recovery being brought within twenty-four months from the discovery of the loss.

In *Chichester* v. *New Hampshire Fire Ins. Co.,* 74 Conn. 510, 512, our Supreme Court upheld a similar provision in a fire insurance contract and used this significant language: "The provision in the policy sued upon requiring an action to be brought 'within twelve months next after the fire' does not operate as a statute of limitations; it is a part of the contract; the rights of the parties flow from the contract, and must be governed by the rules of law applicable to contracts. Such a provision in a contract of insurance is valid and binding upon the parties. *Woodbury Savings Bank* v. *Charter Oak Ins. Co.,* 31 Conn. 517, 529; *Cray* v. *Hartford Fire Ins. Co.,* 1 Blatch. 280, 289; *Riddlesbarger* v. *Hartford Ins. Co.,* 7 Wall 386, 391. The insurer's promise to indemnify is not absolute, but modified by the promise of the insured to commence his action within twelve months. Upon failure to perform this condition the liability of the insurer under the contract ceases to exist; but the remedy of the insured for any cause of action he may have under the contract is not affected, and is governed by the statute of limitations."

In its special reply to defendant's first, second, and third special defenses, plaintiff contends that the action is governed by the six-year Statute of Limitations provided in § 52-576 of the General Statutes, but the general Statute of Limitations has no application to plaintiff's right to recover under

this bond. As the court specifically pointed out in *Chichester* v. *New Hampshire Fire Ins. Co.,* supra, the insurer's promise to indemnify is not absolute but is modified by the insured's promise not to bring an action after twenty-four months from the discovery of the loss which might otherwise be covered if all conditions had been performed. Because plaintiff has failed to comply with the conditions laid down in the policy for indemnity against loss, it has no cause of action under the contract on this ground also.

## IV

In view of the foregoing conclusions, it is not necessary to discuss fully the defendant's fourth special defense—that the discovery of the loss prior to the termination or cancelation of the bond was a condition precedent to coverage for the loss, but a number of decisions appear to support defendant's contentions on this point also. See *Chicora Bank* v. *United States Fidelity & Guaranty Co.,* 161 S.C. 33, 77 A.L.R. 857 & note, 871; *Wachovia Bank & Trust Co.* v. *Manufacturers Casualty Ins. Co.,* 171 F. Sup. 369 (D. N.C.); *McKee* v. *American Casualty Co.,* 316 F.2d 428 (5th Cir.), cert. denied, 375 U.S. 830; *McKee* v. *Great American Ins. Co.,* 316 F.2d 473 (5th Cir.), cert. denied, 375 U.S. 830.

Upon the carefully drawn pleadings, exhibits and affidavits in the file, no genuine issue exists as to any material fact, and upon the law as persuasively presented in defendant's very comprehensive brief, the defendant is entitled to judgment on the pleadings. Accordingly, its motion for summary judgment is granted.