## SECURITY INSURANCE GROUP

v.

### Constance E. and Richard EMERY and Edna G. and Bernard V. Brooks.

Supreme Judicial Court of Maine.

Jan. 20, 1971.

Harrison L. Richardson, Portland, for plaintiff.

Silsby & Silsby, by William S. Silsby, Ellsworth, Edward Stern, Bangor, for defendants.

Before DUFRESNE, C. J., and WEBBER, MARDEN, WEATHERBEE and POMEROY, JJ.

WEBBER, Justice.

This was a complaint for declaratory judgment brought by plaintiff insurance company to determine whether or not it is compelled to afford coverage to the named insured. Plaintiff appeals from an adverse decision below.

Security Insurance Group (Security), a Connecticut corporation, issued to the defendants Brooks in Connecticut an automobile liability policy. The defendants Brooks were then residents of Connecticut. The policy was effective for a year commencing December 17, 1965.

On September 30, 1966, Bernard V. Brooks, while operating the insured vehicle in Dedham, Maine, was in the process of entering the public way. An automobile then operated by the defendant Constance E. Emery came from his right along the public way, went out of control, left the road and was damaged. There was no contact between the two cars. The defendants Emery were then Maine residents. Although the defendants Brooks established their legal residence in Maine at some time after the accident occurred, they had not done so on September 30, 1966.

Immediately after the accident, acting upon the advice of an investigating State

Police Officer, Mr. Brooks filed an accident report with the Maine State Police Headquarters. Apparently because there had been no contact between the two automobiles and because Mr. Brooks felt that Mrs. Emery had caused the accident by driving at an excessive speed, neither he nor his wife gave prompt notice to Security or its agent with respect to the events of September 30, 1966.

The Emery car was insured by the Allstate Insurance Company. On or about November 8, 1966 an investigator for Allstate interviewed the defendants Brooks and obtained signed statements from them. Upon inquiry as to whether or not any report had been made to his insurance company, Mr. Brooks indicated that no such report had been made and took the position that the accident was not his fault, that the cars did not collide and that he had nothing to report. On or about December 5, 1966 a formal subrogation claim was made by letter to Brooks on behalf of Allstate. Nevertheless, the defendants Brooks were not prompted either by the interview with the Allstate investigator or by the claim subsequently made by Allstate to report the accident to Security.

In February, 1967 Security gained its first knowledge of a claimed accident, not from defendants Brooks but presumably from Allstate. The *first and only* notice which defendants Brooks gave to Security was by letter to its agent dated August 14, 1967 after Mr. Brooks had been served with summons upon a complaint brought against him by Emery.

The policy issued by Security contains the following provisions and "conditions" with respect to the notice requirement:[1]

"3. Notice: In the event of an *accident, occurrence or loss*, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time,

place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents *as soon as practicable*.

\* \* \* \* \* \*

"6. Action Against Company—Part I: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy \* \* \*" (Emphasis ours)

■ Plaintiff contends that since Brooks failed to give notice "as soon as practicable" after the "accident" or "occurrence" of September 30, 1966, it is relieved from providing coverage with respect to any damages Emery may recover from Brooks. The defendants assert that the notice requirement was covered by 24 M.R.S.A., Sec. 425 then in effect, which provided in part:

"Whenever any person \* \* \* recovers a final judgment against any other person \* \* \* for any loss or damage specified in section 424, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment \* \* \* provided when the right of action accrued, the judgment debtor was insured against said liability *and that before the recovery of said judgment the insuring company had had notice of such accident, injury or damage*." (Emphasis ours)

The defendants contend that the statute reflected an overriding state policy as to notice which would supersede the contractual notice provisions even of a policy contracted for in another state. We do not so read the statute. In Camire v. Commercial Ins. Co. (1964) 160 Me. 112, 123, 198 A.2d 168 we had occasion to consider the application of the statutory notice provision in

---

1. Part I of the policy covers the liability of the insured to others with respect to bodily injury and property damage. Under "Conditions," it is stated, "Conditions 1, 2, 3, 6, 14, 15, 16 and 18 apply to all Parts."

an action in which the judgment creditor sought to reach and apply the proceeds of an automobile liability insurance policy. While holding that on the facts of Camire and in a controversy between a judgment creditor and an insurance carrier the policy provision for notice "as soon as practicable" was overriden by the statutory provision for notice before judgment, we carefully bottomed that holding on an assumption "that the policy was issued in Maine" and at a time when 24 M.R.S.A. Sec. 425 (then R.S.1954, Ch. 60, Sec. 303) was in effect. Our conclusion was based upon the principle that a contract is presumed to incorporate all relevant mandatory provisions of the statutes of the state in which it is made. We do not read Camire as announcing a rule applicable to policy contracts made between residents of another state in that state. We deem it significant that when in 1969 the Legislature completely revised the insurance law, and enacted the Maine Insurance Code, it expressly excluded any application to "Policies or contracts not issued for delivery in this State nor delivered in this State." 24–A M.R.S.A., Sec. 2401.[2] The provisions of the repealed 24 M.R.S.A., Sec. 425 were reenacted without substantial change to become 24–A M.R.S.A., Sec. 2904. We are satisfied that this limitation of application to "contracts of casualty insurance delivered or issued for delivery in this State" reflects no change in legislative policy and intention. We conclude that the legislative policy as to notice did not extend to Connecticut contracts.

The argument here advanced that a contractual notice requirement is to be governed by the law of the state in which the contract is to be performed has been made and rejected in other jurisdictions. The great weight of authority supports the principle that an express provision for notice in an insurance contract is to be construed under the law of the state where the contract is made.

Faced with facts almost identical to those in the instant case, the Mississippi Court in Southwestern Fire & Casualty Co. v. Kovar (1956) 227 Miss. 386, 86 So.2d 356, 358 said:

"We are of the opinion that the policy is to be construed as to the provisions for notice of accident according to the laws of Texas. The policy was a Texas contract, made between residents of Texas, and no place of performance is designated even though it protects the insured wherever he may be. The Court cannot by applying the law of Mississippi, which has a more liberal rule of construction of the notice provisions of liability policies, enlarge the (insurance company's) obligations under the contract by applying the law of Mississippi to the terms of a contract made in Texas by Texas parties. To do so would deprive (the company) of due process of law. The Supreme Court of the United States has so held in a case arising in this State. Hartford Acc. & Indem. Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178; * * *."

In *Delta & Pine Land Co.,* cited by the the Mississippi Court, the Supreme Court said at page 149 of 292 U.S., at page 636 of 54 S.Ct.:

"The liability was for the payment of money only, and was conditioned upon three events, loss under the policy, notice to the (company) at its home office, and presentation of claim within fifteen months of the termination of the suretyship. All of these conditions were of substantial importance, all were lawful in Tennessee, and all go to the obligation of the contract. It is true the bond contemplated that the employee whose

---

2. Enacted by P.L.1969, Ch. 132, Sec. 1. See also repeal of 24 M.R.S.A., Secs. 1–426 by P.L.1969, Ch. 132, Sec. 11; same limitation of applicability in 24–A M.R.

S.A., Sec. 2901 (casualty insurance contracts) enacted by P.L.1969, Ch. 132, Sec. 1.

faithfulness was guaranteed might be in any state. He was in fact in Mississippi at the date of loss, as were both obligor and obligee. The contract being a Tennessee contract and lawful in that state, could Mississippi, without deprivation of due process, enlarge the (company's) obligations by reason of the state's alleged interest in the transaction? We think not. Conceding that ordinarily a state may prohibit performance within its borders even of a contract validly made elsewhere, if the performance would violate its laws * * *, it may not, on grounds of policy, ignore a right which has lawfully vested elsewhere, if, as here, the interest of the forum has but slight connection with the substance of the contract obligations. Here performance at most involved only the casual payment of money in Mississippi. In such a case the question ought to be regarded as a domestic one to be settled by the law of the state where the contract was made. A legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the forum, regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment."

It has been suggested that the view expressed by the Restatement, Conflict of Laws is otherwise. But in Sec. 358(b) it is stated:

" * * * While the law of the place of performance is applicable to determine the manner and sufficiency and conditions under which performance is to be made, it is not applicable to the point *where the substantial obligations of the parties is materially altered * * *.*" (Emphasis ours)

If it be conceded, as it must, that a notice provision in an automobile liability insurance policy is a "substantial obligation" of the contract, the caveat of the Restatement is fully applicable. The insurer is dependent on prompt notice for adequate opportunity to investigate, prepare the defense and engage in settlement negotiations.

We are aware that in Watson v. Employers Liability Assur. Corp. (1954) 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 the Supreme Court held that Louisiana had an overriding state interest in its policy permitting "direct action" against an insurance carrier, an interest which justified alteration of a Massachusetts contract prohibiting such action. The Court, however, carefully distinguished Delta & Pine Land Co., supra, and gave no indication that the strength of that case as precedent was diminished.

We conclude that Maine has no statutory policy with respect to liberalized notice requirements which is applicable to contracts made outside of Maine, and that if the Legislature had sought to impose its liberal notice requirement upon foreign contracts, it would have violated constitutional safeguards.

The Justice below properly found the facts on the basis of supportive evidence and rightly concluded that this was a Connecticut contract to be construed in accordance with Connecticut law. What then is the Connecticut law with respect to a policy requirement of notice of an "accident, occurrence or loss" to be given "as soon as practicable"? In effect, the reasonable man test is applied. Would a man of ordinary and reasonable prudence believe that liability because of injury may arise or be claimed? If so, notice must be given as soon as can reasonably be expected under the circumstances. Connecticut recognizes the "trivial accident" theory and delay in notice may be excused if the accident is so trivial that the insured could reasonably believe that no claim would be made. Whether or not the insurer is prejudiced is not material in Connecticut and it has been held flatly that "failure to comply

**740**

voids coverage even in the absence of prejudice." The Connecticut law is developed and analyzed in the following cases: Silver v. Indem. Ins. Co. of No. Am. (1951) 137 Conn. 525, 79 A.2d 355; Hartford Fed. Sav. & L. Assn. v. Aetna Cas. & Sur. Co. (1964) 25 Conn.Sup. 418, 206 A.2d 650, 655; Preferred Acc. Ins. Co. of N. Y. v. Castellano (1945) 2 Cir., 148 F.2d 761, 762; Employers Liab. Assur. Corp. v. Travelers Ins. Co. (1969) 2 Cir., 411 F.2d 862, 866; Francis v. Maryland Cas. Co. (1967) 2 Cir., 385 F.2d 577, 579; and Curran v. Conn. Indem. Co. of New Haven (1941) 127 Conn. 692, 20 A.2d 87.

The only error below was in applying Connecticut law to the facts found. Although recognizing the applicablity of the reasonable man test, the Justice below took into account the fact that Mr. Brooks was "an unskilled laborer, an ordinary citizen, lacking knowledge of the niceties of such matters," and in effect fixed a standard for his performance of contractual duty substantially lower than that imposed upon a man of ordinary prudence. There is no authority anywhere which supports a subjective or "personal equation" test. Only the objective, reasonable man test is recognized. Young v. Travelers Ins. Co. (1941) 5 Cir., 119 F.2d 877, 879.

■ Even if it could be said that defendants Brooks could reasonably ignore the warning implicit in the investigation by Emery's insurance company in November, 1966, it is clear that a man of ordinary and reasonable prudence was bound to know on or about December 5, 1966 that the "occurrence" of September 30, 1966 had ripened into a claim. It was at that time that the insured were faced with a subrogation claim formally made upon them by Allstate. Their failure for eight months thereafter to give the notice required by the contract constituted a breach under Connecticut law and relieved the plaintiff of any obligation to provide coverage. The defendants Brooks gain nothing from the fact that plaintiff obtained some knowledge

of the "occurrence" in February, 1967. The information did not come by way of notice given by or at the direction of the insured and thus does not satisfy contractual obligation—but even if notice had been given at that time, it would nevertheless have been tardy and not given "as soon as practicable" within the meaning of the contract.

Appeal sustained. Remanded for entry of a declaratory judgment in accordance with the prayers of the complaint and this opinion.

DUFRESNE, C. J., concurs in the result.

MARDEN, J., sat at argument but retired before the decision was rendered.