[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Milford Power Company, LLC ("Milford Power") filed an action against Alstom Power, Inc. f/k/a ABB Alstom Power, Inc. f/k/a ABB Power Generation, Inc. ("Alstom Power") and Black Veatch Construction Company, Inc. ("Black Veatch") seeking declaratory relief in connection with a certain contract entered into among the parties on or about February 27, 1999. Under the contract, Alstom Power and Black Veatch were to provide engineering, procurement and construction services to Milford Power for the construction of an electric power generating plant in Milford, Connecticut for a contract price in excess of $230,000,000.
According to the allegations of the complaint, the first and second phases of the construction of the plant were to be substantially completed by March 31, 2001. On February 2, 2000, a heat recovery steam generator collapsed at the site, causing the deaths of two workers and significant property damage. The United States Occupational Safety and Health Administration ("OSHA") investigated the incident on February 3, 2000, closing down a portion of the project for a period of time.
On March 21, 2000, the defendants sent a letter to Milford Power claiming that the collapse of the generator and subsequent OSHA investigation constitute "force majeure" events as defined in Article 13.1 of the contract. On August 28, 2000, the defendants sent another letter to Milford Power claiming that a lack of available labor constitutes an additional "force majeure" event as defined in Article 13.1 of the contract. Under the terms of the contract, the defendant CT Page 8563 contractors would be entitled to an adjustment of the contract price and extensions of the dates specified as substantial completion dates if timely notice of a valid "force majeure" event is provided.
The operative complaint, which is the amended complaint dated December 6, 2000,[1] seeks declarations from this court that the claimed "force majeure" events do not qualify as "force majeure" events and that both notices were not sufficient in content or timely given to Milford Power. By motion dated December 19, 2000, the plaintiff moves for summary judgment on the first count of its complaint, claiming as a matter of law that the defendants' notice and claim of a "force majeure" event were untimely and, therefore, invalid.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co.,235 Conn. 185, 202, 663 A.2d 1001 (1995). "A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case." Catz v. Rubenstein, 201 Conn. 39, 48, 513 A.2d 98
(1986), quoting from United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 379, 260 A.2d 596 (1969).
Section 13.1 of the subject contract provides that "[i]n case of Force Majeure acting upon either the Contractor or the Owner, the affected party shall not be considered in default of its obligations hereunder and the contractually guaranteed dates and the Contract Price will be adjusted accordingly." After defining "Force Majeure", the section provides that "[t]he affected party shall promptly notify the other party as set forth in Section 9.5 hereof, and shall keep the unaffected party informed as to any new developments pertaining to such Force Majeure."
Section 9.5 is captioned "Changes Caused by Events of Force Majeure or Owner Delays" and provides, in relevant part, as follows: CT Page 8564
 (a) Notice to Owner. Contractor shall give timely notice to Owner of any event listed in Section 9.2. which notice shall, to the extent practicable, specify the length of delay in the Guaranteed Completion Date, and any increase in the Contract Price by virtue of such delay, and shall substantiate same to the reasonable satisfaction of Owner. If practical, such notice must be issued promptly but in no event later than seventy two (72) hours following actual knowledge of such condition by Contractor. In no event shall Force Majeure be claimable by Contractor beyond the period of 30 days from the occurrence of Force Majeure as provided in Article 13.[2] In the event that it is impracticable to specify the length of such delay, or the increase in the Contract Price at the time the notice referred to in the preceding sentence is delivered, Contractor shall provide Owner with periodic supplemental notices during the period over which the event continues. Such supplemental notices shall keep Owner informed of any change, development, progress or other relevant information concerning the event of which Contractor is aware.
At pages 4-5 of the defendants' memorandum of law in opposition to the plaintiffs motion for summary judgment, the defendants (collectively referred to in the brief as "the Consortium") concede that the Consortium "failed to strictly comply with Article 9.5(a) of the Contract inasmuch as it failed to provide written notice to MPC [Milford Power] within seventy-two (72) hours of its having actual knowledge of the Incident. . . ." The defendants claim, however, that the subject notice provision is not a condition precedent to their right of recovery for a "force majeure" event, that the plaintiff has not demonstrated that it suffered any prejudice as a result of the noncompliance and that strict adherence to the notice provision would constitute an inequitable forfeiture under the facts of this case.
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact. . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . It is the general rule that a contract is to be interpreted according to the intent expressed in its language and not by an intent the court may believe existed in the minds of the parties. . . . When the intention conveyed by the terms of an agreement is clear and CT Page 8565 unambiguous, there is no room for construction. . . . [A] court cannot import into [an] agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms. . . . It is axiomatic that a party is entitled to rely upon its written contact as the final integration of its rights and duties." (Citations omitted; internal quotation marks omitted.) Levine v. Massey, 232 Conn. 272,277-279, 654 A.2d 737 (1992).
The court finds as a matter of law that the seventy-two hour notice provision set forth in Article 9.5(a) of the subject contract is clear and unambiguous and that compliance with that provision is a condition precedent to the right to any relief afforded in the "force majeure" section of the contract. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . Whether the performance of a certain act by a party to a contract is a condition precedent to the duty of the other party to act depends on the intent of the parties as expressed in the contract and read in light of the circumstances surrounding the execution of the instrument." (Citations omitted; internal quotation marks omitted.)Christophersen v. Blount, 216 Conn. 509, 512, 582 A.2d 460 (1990). It is clear that compliance with a notice provision can be a condition precedent to recovery under the terms of a contract. In Cecio Brothers,Inc. v. Town of Greenwich, 156 Conn. 561, 244 A.2d 404 (1968), the Connecticut Supreme Court held that providing notice within two days, as required under the terms of a municipal construction contract, was a condition precedent to any claim by the contractors for additional compensation for additional materials provided.
With respect to the contract entered into among Milford Power, Alstom Power and Black Veatch, Article 13, the "force majeure" section, provides that a valid "force majeure" event will result in an adjustment of the contract price and contractually guaranteed dates. That section further provides that the "affected party shall promptly notify the other party as set forth in Section 9.5. . . ." (Emphasis added.) Section 9.5 (a) provides that the notice "must be issued promptly but in no eventlater than seventy two (72) hours following actual knowledge of such condition" constituting the "force majeure" event. (Emphasis added.) Section 29.1.1(A) provides that "[t]ime is of the essence in the achievement of the Guaranteed Completion Date for Contractor's performance under this Contract." (Emphasis added.)
"A contract is to be construed as a whole and all relevant provisions will be considered together. . . ." HLO Land Ownership Associates LimitedPartnership v. City of Hartford, 248 Conn. 350, 356, 727 A.2d 1260
(1999), quoting from Barnard v. Barnard, 214 Conn. 99, 109, 570 A.2d 690
CT Page 8566 (1990). From a review of the contractual language in these referenced sections, the court is confident that the giving of notice by the defendants of a "force majeure" event within seventy two hours of the occurrence of that event is required before the duty arises on the part of the plaintiff to provide relief as set forth under the "force majeure" provisions of the contract.
The defendants argue that enforcement of the notice provision would constitute an inequitable forfeiture, particularly in light of the fact that Milford Power had actual knowledge of the incident and OSHA's subsequent investigation at the time they occurred. Significantly, while Milford Power was aware of the collapse of the steam generator and OSHA's restriction of access to the site, Milford Power was not aware that the defendants intended to claim these incidents as "force majeure" events, hi order for that knowledge to have been imparted, the defendants needed to provide written notice of such claims within the seventy-two hour deadline. This, as defendants concede, was not done.
Furthermore, the doctrine of "disproportionate forfeiture", as relied upon by defendants and as articulated in the Restatement (Second) Contracts Section 229 (1979), is simply not applicable to the facts of this case.[3] Section 229 of the Restatement provides as follows:
Section 229. Excuse of a Condition to Avoid Forfeiture
 To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the nonoccurrence of that condition unless its occurrence was a material part of the agreed exchange.
In the comments to this section, it is noted that "[i]t is intended to deal with a term that does not appear to be unconscionable at the time the contract is made but that would, because of ensuing events, cause forfeiture" (Comment a) and that "[t]he rule stated in the present Section is, of necessity, a flexible one, and its application is within the sound discretion of the court" (Comment b). The subject notice provision is neither unconscionable as originally drafted nor as applied; it does not become unconscionable because the defendants neglected to comply with it at the time of the incident. Moreover, for the reasons previously mentioned, it was a material part of the agreed exchange. The court cannot exercise its discretion to vary the express terms of this contract.
"The parties in this case entered into sophisticated and carefully crafted commercial contracts from positions of relative equality, without the improper influence of fraud or duress. Even if the result of the fair and logical enforcement of those unambiguous agreements seems unduly to burden one of the parties, we decline to embark a voyage into uncharted waters in which untrammeled and unrestrained judicial revisionism would depart significantly from an aspect of contract law upon which contracting parties reasonably can be assumed to have relied for many years." Tallmadge Bros., Inc. v. Iroquois Gas Transmission System. L.P.,252 Conn. 479, 506, 746 A.2d 1277 (2000).
For the foregoing reasons, the court finds that the seventy-two hour notice requirement was a condition precedent to the defendants' right of recovery under the "force majeure" provisions of the contract. The defendants failed to submit the written notice within the requisite time period. Accordingly, the plaintiff's motion for summary judgment as to the first count of the amended complaint dated December 6, 2000 is granted.
 ___________________ KOLETSKY, JUDGE