[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION APPLICATION FOR PREJUDGMENT REMEDY
The plaintiff has brought an application for a prejudgment remedy pursuant to General Statutes § 52-278d. A hearing on said application commenced before the court on July 9, 2001. Thereafter, evidence was also presented on July 20, 2001, December 19, 2001 and January 14, 2002. The parties submitted legal memorandums of law to the court in support of their respective positions on February 15, 2002.
The plaintiff argues that defendant entered into a written contract with the plaintiff for construction work for projects known as the Shelton Technology Center and the Cross County Sewer line. The defendant, hereinafter referred to as "Dart" was hired by the plaintiff hereinafter referred to as "CD 36" to do site work, such as, excavation, blasting, paving and landscaping at the construction site. The contract, which was for a price of $1,732,000 lists CD 36 as the "Owner" and "Dart" as the contractor.
The plaintiff claims that on August 18, 2000 it conducted an inspection of a building pad prepared by Dart. According to CD 36, the inspection revealed deficiencies in the building pad, which would not allow further construction of a structure on the building pad.
An argument regarding the alleged deficiencies and defects ensued between CD 36's representative Cuminotto and Dart's president Cochiola. As a result of this argument, Cochiola ordered his workers off of the property, ending the workday early. When CD 36 became aware that Dart was leaving the site, Cuminotto notified the Shelton Police Department and CT Page 6931 barred Dart or its employees from returning to, or re-entering, the construction site. CD 36 claims that Dart by leaving the site, abandoned the remaining work which it had contracted to complete.
Thereafter, the plaintiff CD 36 hired new companies to complete Dart's work and to remedy alleged defects and deficiencies in work already done by Dart. CD 36 claims that corrective work and additional costs that have been incurred due to Dart's actions amount to more than the $152,202, prejudgment remedy which is being sought by this application.
Dart in defending against CD 36's claim, denies that its work was defective and/or deficient. It also denies that it abandoned the construction site on August 18, 2000. Dart claims that it had every intention of honoring its contract obligations with the plaintiff, but was prevented by doing so by the plaintiff, who had enlisted the Shelton Police Department's assistance in barring Dart from re-entering the construction site.
Dart additionally claims that the plaintiff CD 36 has not satisfied certain conditions precedent listed in the contract, prior to instituting litigation, including this application for a prejudgment remedy.
 II.
General Statutes § 52-278d regarding prejudgment remedies in pertinent part states:
 "The defendant shall have the right to appear and be heard at the hearing. The hewing shall be limited to a determination of (1) whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . If the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiffs favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court."
CT Page 6932 The defendant in opposing the application for a prejudgment remedy argues that the plaintiff, CD 36, has not satisfied a condition precedent to pursuit of the litigation, as set forth in Section 4.4.1 of the written contract between the parties. Dart claims that CD 36 did not provide written notice of its claims against Dart to the Engineer and Dart, in writing, within three months of the condition giving rise to the claims, as required by Sections 4.3.1 and 4.3.2 of the contract. The court agrees with the defendant Dart.
Since written notice within this time frame is established by the contract to be a condition precedent to the institution of litigation, and since the time for CD to comply with the notice provisions has passed, its prejudgment remedy application should be denied.
 II.
Prejudgment remedy proceedings do not address the merits of the action; they concern only whether and to what extent the plaintiff is entitled to have property of the defendant held in custody of the law pending adjudication of the merits of the action. Tyler v. Schnabel,34 Conn. App. 216, 219-20, 641 A.2d 388 (1994). The plaintiff does not have to establish that it will prevail. It has to establish that there is probable cause to sustain the validity of the claim. Id.; East Lyme v.Wood, 54 Conn. App. 394, 397, 735 A.2d 843 (1999); Dufraineau v. CHRO,236 Conn. 250, 261, 673 A.2d 101 (1996). Probable cause must exist as to both the merits of the action and damages.
CD 36's prejudgment remedy application is denied because of CD 36's failure to give notice, as required by the contract, precludes a finding of a probability of success at trial. The standard for a finding of probable cause requires the court to conclude that judgment will be rendered in favor of the plaintiff, taking into account any defenses, counterclaims or setoffs, claims of exemption and claims of adequate insurance, as stated in General Statutes § 52-278d. In evaluating whether probable cause exists that a judgment will enter in favor of the plaintiff, the court must evaluate any defenses raised by the defendant.Haxhi v. Moss 25 Conn. App. 16, 591 A.2d 1275, 1277 (1991). "A good defense . . . will be enough to show that there is no `probable cause that judgment will be rendered in the matter in favor of the plaintiff'"Id. at 20, quoting Augeri v. Wooding Co., 173 Conn. 426, 429, 378 A.2d 538
(1977).
The court agrees with the defendant Dart that courts have routinely enforced contract provisions that require written notice within specified time periods. For example, it has been held that "[t]he provision in [a] bond that the `[i]nsured shall give the [u]nderwriter notice of any loss CT Page 6933 at the earliest practicable moment after discovery thereof' is a condition precedent to the [i]nsured's recovery, and [the insured's] failure to give [the underwriter] notice of the loss within the time frame required by the bond precludes a recovery." Hartford FederalSavings v. Aetna Casualty and Surety Co., 25 Conn. Sup. 418, 427,206 A.2d 650 (1964); Silver v. Indemnity Ins. Co., 137 Conn. 525,79 A.2d 355 (1951).
The same rule applies in a construction setting. See Cecio Brothers,Inc. v. Town of Greenwich, 156 Conn. 561. 244 A.2d 404 (1968); MilfordPower Company, LLC. v. Alstom Power, Inc., 2001 Ct. Sup. 8562, Docket No. X04CV000121672S, judicial district of New London at New Britain (June 28, 2001) (Koletsky, J.). "The subject notice provision is neither unconscionable as originally drafted nor as applied; it does not become unconscionable because the defendants neglected to comply with it at the time of the incident. Moreover, for the reasons previously mentioned, it was a material part of the agreed exchange. The court cannot exercise its discretion to vary the express terms of this contract." Milford PowerCo. LLC. v. Alstom Power, Inc., supra.
The contract provisions in this case are not hidden boilerplate provisions that come as a surprise to the plaintiff Instead, the evidence is clear that the parties negotiated over these very terms. This evidence is apparent on its face by virtue of the modifications that the parties made to these terms. As is readily apparent from the contract, the parties agreed to change the time frames involved, but not their substance or effect as a condition precedent to litigation. Section 4.4.1 of the contract specifies that "Claims, including those alleging an error by the [Engineer] . . . shall be referred initially to the [Engineer] for decision" and that "[a]n initial decision by the [Engineer] shall be required as a condition precedent to litigation of all claims . . . unless 10 days have passed after the Claim has been referred to the [Engineer] with no decision having been rendered by the [Engineer]." Contract Section 4.3.1 defines the term "Claim" and specifies that "Claims must be initiated by written notice." Contract Section 4.3.2 provides that "Claims by either party must be initiated by written notice to the [Engineer] and the other party."
Written notice within a specified time is a condition precedent to litigation. There is no evidence that CD complied with this unambiguous condition precedent. Indeed, the evidence is undisputed that CD did not comply with these contract provisions.
"Courts of law must allow parties to make their own contracts, and can enforce only such as they actually make." Chase Brass Copper Co. v.Chase Brass Copper Workers Union, 139 Conn. 591, 595, 96 A.2d 209
CT Page 6934 (1953).
 "Even if the result of the fair and logical enforcement of those unambiguous agreements seems unduly to burden one of the parties, we decline to embark a voyage into uncharted waters in which untrammeled and unrestrained judicial revisionism would depart significantly from an aspect of contract law upon which contracting parties reasonably can be assumed to have relied for many years."
 Tallmadge Bros., Inc. v. Iroquoise Gas Transmission System, L.P.,252 Conn. 479, 506, 746 A.2d 1277 (2000).
Accordingly, the application for a prejudgment remedy is hereby denied.
By the Court,
Arnold, J