CECIO BROTHERS, INC. *v.* TOWN OF GREENWICH ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued May 7—decided June 25, 1968

*Stewart H. Jones,* for the appellant-appellee (named defendant).

*George W. Scott, Jr.,* with whom were *John W. Roberts* and, on the brief, *Robert C. Barnum, Jr.,* for the appellee-appellant (plaintiff).

HOUSE, J. This case arose out of a school construction project in Greenwich. The town of Greenwich entered into a contract with the V. B. Construction Company, Inc., to construct a school at a cost of $1,707,423. The plaintiff entered into a subcontract with the V. B. Construction Company, Inc., hereinafter called the contractor, whereby it agreed, for the sum of $249,000, to furnish labor, equipment and materials in connection with the construction of the school, including the establishment of finished grades in accordance with the plans and specifications of the prime contract. The plans and specifications, including a topographical survey, were prepared by architects hired by the town and by an engineer employed by the architects. On the basis

of the survey and an estimate of borrow fill requirements submitted to it by an independent estimator whom it hired for that purpose (and who was an employee of the engineer who was employed by the architects for the project), the plaintiff estimated that 39,000 cubic yards of borrow fill would be necessary to grade the project in accordance with the plans and specifications. In performing its subcontract, the plaintiff furnished more than 49,000 cubic yards of borrow fill. The plaintiff's action to obtain compensation for the 10,000 additional cubic yards of borrow fill was brought against the town, the contractor and the American Surety Company of New York, which had given a performance bond to the town in the amount of the prime contract. As originally instituted, the action was one for quantum meruit. After the town successfully demurred to this complaint, the plaintiff amended it to include an allegation that the town "has been unjustly enriched in that it has received fill from the plaintiff which cannot, in equity and good conscience, be retained without paying for it."

After the pleadings were closed, the case was referred to a referee who, after a hearing, concluded that the town was unjustly enriched by the additional borrow fill furnished by the plaintiff and that the plaintiff was entitled to damages of $14,000 from the town, that being the reasonable cost of furnishing this additional borrow fill in place and compacted. The town's objections and exceptions to the report were overruled, and judgment against the town was rendered in the amount of $14,000. Although the judgment did not expressly find the issues in favor of the other two defendants, it did award costs to the defendant contractor and to the defendant surety company. The defendant town

appealed from the judgment on several grounds, and the plaintiff also appealed, claiming that the court erred in failing to include an award of interest on the $14,000 damages.

In the view which we take of these appeals, it is unnecessary to consider most of the town's many assignments of error. The determinative question presented to us is whether the facts support the conclusion that the town will be unjustly enriched unless it is required to pay the plaintiff for furnishing 10,000 cubic yards of borrow fill in excess of the amount which it estimated was necessary to establish finished grades in accordance with the plans and specifications of the prime contract and on the basis of which the plaintiff contracted with the contractor.

The doctrine of unjust enrichment has been described as a doctrine "which is so broad as to include almost any case in which unfair dealing appears and so vague as to give no help in solving cases as they arise." 3 Page, Contracts (2d Ed.) § 1503, p. 2567; see *Fischer* v. *Kennedy,* 106 Conn. 484, 498 (dis.), 138 A. 503. It applies "wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." 5 Williston, Contracts (Rev. Ed.) § 1479. "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. *Franks* v. *Lockwood,* 146 Conn. 273, 278, 150 A.2d 215; *Schleicher* v. *Schleicher,* 120 Conn. 528, 534, 182 A. 162." *Connecticut National Bank* v. *Chapman,* 153 Conn. 393, 399, 216 A.2d 814. With no other test than what,

under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed to examine the circumstances and the conduct of the parties and apply this standard.

Although the matter was strongly contested, the referee found that there was an undefined discrepancy between the topographical survey and the actual elevation of the existing grades on the site and that the survey indicated that 39,000 cubic yards of borrow fill would be necessary to establish proper finished elevations of the site in accordance with the plans and specifications of the prime contract. The plaintiff commenced the delivery of fill to the job on August 29, 1957. Its records disclose that by February 11, 1958, it had delivered 39,177.6 cubic yards. It nevertheless, with no notice to the contractor or the town, continued to deliver additional fill until September 24, 1958, by which time it had delivered in excess of 50,000 cubic yards. Although the plaintiff kept a record of its fill deliveries to the job, it did not discover the discrepancy until August or September, 1958, and did not make a written claim until February 12, 1959, when it demanded from the contractor $14,000 for 10,000 cubic yards, at $1.40 per cubic yard, of additional borrow fill in place and compacted. Although the referee made no finding as to when any claim was filed with the town, the plaintiff alleges that it filed its claim with the town and the contractor on February 12, 1959, "for payment for the said 10,000 additional cubic yards of borrow fill." There is nothing in the record to indicate that either the town or the contractor received notice of, knew or had any reason to suspect the existence of any such claim on the

part of the plaintiff until the plaintiff rendered a bill for additional fill on February 12, 1959—a full year after the date on which the plaintiff had completed delivery of the originally estimated 39,000 cubic yards of fill.

In view of this lack of notice and the long delay in presenting a claim for extra compensation, certain provisions of the subcontract between the plaintiff and the contractor are particularly relevant. By the terms of that contract, the plaintiff expressly agreed that all claims for loss, damage, or extra or additional work should be made by it to the contractor within two days of first sustaining any loss or damage or of proceeding with any authorized extra or additional work and that, if it failed to make such a claim within that time, its right to extra compensation and reimbursement should be deemed to have been waived and forfeited "and the subcontractor shall not be entitled to any payment on account of any such damage, extra and/or additional work, anything in this Subcontract to the contrary notwithstanding." That contract also provided that the subcontractor should not be entitled to any extra compensation for extra work unless it was ordered by the contractor in writing.[1] The plaintiff makes

---

[1] "The Subcontractor shall not be entitled to receive any extra compensation of any kind whatsoever, regardless of whether the same was ordered by the Contractor or any of its representatives, unless such extra order is given in writing and signed by an Officer of the Contractor; and the Subcontractor specifically agrees that it will make no claim that it was authorized to do any extra work or make any modification in its work by the Contractor, or any representative, at the site or elsewhere, and if such work was so ordered and the Subcontractor has performed the same, but has received no written order therefor, as herein provided, the Subcontractor shall and hereby does waive any claim for extra compensation therefor, regardless of any written or verbal protests or claims by the Subcontractor."

no claim that the contractor ever ordered the additional fill.

In the subcontract the plaintiff also expressly agreed that it was "thoroughly familiar" with all the provisions of the contract between the town and the contractor and that that contract "shall be held and taken as a part of this Subcontract in every particular." The prime contract contained several provisions relevant to the plaintiff's delayed claim for extra compensation. It provided that nothing contained in the contract documents should create any contractual relation between any subcontractor and the owner. Each subcontractor agreed "[t]o make all claims for extras . . . in the manner provided in the General Conditions for like claims by the Contractor upon the Owner, except that the time for making claims for extra cost is one week." The relevant section of the general conditions provided that "no extra work or change shall be made unless in pursuance of a written order from the Owner signed or countersigned by the Architect, or a written order from the Architect stating that the Owner has authorized the extra work or change, and no claim for an addition to the contract sum shall be valid unless so ordered." It was agreed that if, during the course of the work, any errors, omissions, ambiguities or discrepancies should be found on the drawings or specifications, the architects should interpret the intent of the drawings and specifications, and the contractor should carry out the work in accordance with the decision of the architect. A specific provision of the agreement was that "[n]o additional compensation will be made for fill brought to the site to meet subgrade requirements."

It was in the face of all of these requirements for prompt notice and written authorization as condi-

tions precedent to any claim for compensation, in addition to that specified in the contract documents, that the plaintiff, with no notice to the owner or contractor and in the absence of any authorization, proceeded to run up a claim for extra compensation in the amount of $14,000. The plaintiff alone knew or had the means of knowing that the work it was doing was or would be claimed as an extra. In this respect, the case materially differs from such cases as *Wexler Construction Co.* v. *Housing Authority,* 149 Conn. 602, 606, 183 A.2d 262, *Butler* v. *Solomon,* 127 Conn. 613, 615, 18 A.2d 685, and *Casey* v. *McFarlane Bros. Co.,* 83 Conn. 442, 444, 76 A. 515, which concerned a contractor's right of recovery on the theory of an implied contract under circumstances in which a plaintiff rendered services at the request of a defendant under an expectation that they were to be paid for and under such circumstances that the defendant knew or, as a reasonable person, should have known that the plaintiff expected payment. Here, there was nothing in the circumstances to alert the town that the plaintiff was performing any work or furnishing any materials beyond that specified in the contract.

Had the plaintiff given timely notice in accordance with the terms of its subcontract, the contractor and the town would have had an opportunity not only then and there to have inquired into the accuracy of the plaintiff's claims as to the fill requirements but, more importantly, the town would have had an opportunity to save the added expense and keep within the limits of the public funds appropriated for the project by changing site plans or reducing costs in other portions of the project. If it is equitable for a plaintiff to recover extra compensation under the circumstances of this case,

it is difficult to see how a municipality could ever protect itself from a contractor's unanticipated and long-delayed claim for compensation in addition to that provided by the contract and in excess of the public funds appropriated for a construction project. Balancing the equities, we conclude that under the circumstances the plaintiff is not entitled to recover damages from the town on the basis of unjust enrichment. It is unnecessary to consider other assignments of error on the town's appeal or the assignment of error on the plaintiff's appeal.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant the town of Greenwich.

In this opinion the other judges concurred.