NUFER B. BOLMER ET AL. *v.* MARY KOCET ET AL.
(3683)

BORDEN, DALY and BIELUCH, Js.

Argued December 10, 1985—decision released April 1, 1986

*Robert H. Hall,* for the appellants (plaintiffs).

*James R. Mulvey,* with whom on the brief, was *Mark W. Korotash,* for the appellees (defendants).

BORDEN, J. The plaintiffs appeal from the judgment of the trial court dismissing all three counts of their complaint against the three defendants for failure to make out a prima facie case pursuant to Practice Book § 302. The issues involve the sufficiency of the evidence to make out prima facie cases regarding the plaintiffs' claims of express contract, implied contract and unjust enrichment, arising out of a complicated real estate transaction.

The plaintiffs, Nufer B. Bolmer (hereinafter referred to as Bolmer) and R. Eugene Bolmer, who are residential real estate developers, sued the defendants, Mary Kocet and her daughter, Mildred Barago, and Mildred Barago's husband, John Barago, claiming breach of an express contract for the sale of real estate by Kocet, and also claiming breach of an implied contract and unjust enrichment as to all three defendants. The three count complaint contains thirty allegations which pertain to all of the counts and all of the defendants. It contains one additional allegation against Kocet pertaining to count one for breach of an express contract, three additional allegations against all defendants pertaining to count two for breach of an implied contract, and one additional allegation against all defendants in count three for unjust enrichment. We find error in the

trial court's dismissal of the complaint for failure to make out a prima facie case in express contract against Kocet. As to count two, we find error in the trial court's dismissal of the complaint for failure to make out a prima facie case in implied contract against Kocet and against John Barago, but we find no error in the dismissal of this count against Mildred Barago. Finally, we find error in the trial court's dismissal of the unjust enrichment claim against Kocet, but no error in the dismissal of this count against the Baragos.

## ADMISSIONS OF FACT

Certain factual allegations of the plaintiffs' complaint were admitted by the defendants. These admissions are as follows: The defendants knew that the plaintiffs were in the business of subdividing and building on residential property. Prior to August 14, 1964, Mary Kocet and her late husband, John Kocet, owned twenty-seven acres of primarily undeveloped land (the tract) east of Flat Swamp Road and north of Cemetery Road in Newtown. Mary and John Kocet occupied a house in the northwest corner of the tract fronting on Flat Swamp Road (the Kocet house lot). On August 14, 1964, the Kocets conveyed approximately 1.5 acres of the tract to the Baragos (the Barago house lot). This property is south of the Kocet house lot and is bounded on the west by Flat Swamp Road. The Baragos built a house on this lot. In May, 1969, the Kocets conveyed a lot to Mildred Barago (the Mildred Barago lot). This lot is south of the Barago house lot and is bounded on the west by Flat Swamp Road. In 1977, John Kocet requested that Bolmer obtain subdivision approval for the balance of the tract which he and Mary Kocet owned, which approval was also to include the Barago house lot and the Mildred Barago lot. Negotiations between Bolmer and the Kocets resulted in an agreement, the general effect of which was that Bolmer would, at his expense, take all necessary steps for

residential subdivision approval for the tract, and that this subdivision approval would include as legal conforming lots a lot for the residence of the Kocets and an enlarged lot for the Baragos. In exchange, the Kocets agreed to convey the balance of the tract, except for the lots of the Kocets and the Baragos, to Bolmer at a price of $9333 per approved building lot.

The defendants further admitted as follows: A written contract embodying their agreement was signed by the Kocets and Bolmer on March 7, 1977.[1] The contract provided for a closing "60 days after approval of a subdivision plan of said property by the Planning and Zoning Board of the Town of Newtown, which the Buyer herein shall pursue with diligence." The contract further provided that the "Buyer . . . agrees that he will obtain as soon as possible at his own expense, a subdivision map acceptable by the Planning and Zoning Commission of the above described property. The purchase price for the above sale shall be that amount equal to $9,333.00 times the number of acceptable building lots approved on the above subdivision map by the said Planning and Zoning Commission. The buyer will attempt to procure approval of 9 lots and if that is not possible, a minimum of 8 lots. If the Planning and Zoning Commission does not approve at least 8 lots this contract may be voided at the option of either party," in which case the deposit would be returned "and all further rights under this contract will terminate except that seller will pay one-half of the surveying and engineering costs, but in any event not over $4000, the other costs being borne by the buyer." In addition to

---

[1] The written contract described the property to be sold specifically by boundaries, and provided that the "Sellers shall retain title to such property on Flat Swamp Road as required by the Planning and Zoning Commission to make the Sellers' home property . . . on Flat Swamp Road and property of John Robert Barago and Mildred Ann Barago and property of Mildred Ann Barago, respectively, on Flat Swamp Road conform to two acre size zone requirement for said area."

a deposit of $1000, Bolmer was to pay for the property by a purchase money first mortgage described in a schedule attached to the contract. The mortgage note called for the first annual payment of principal and interest on January 10, 1978. It was also admitted that John Kocet died after the execution of the agreement, and that Mary Kocet is now the owner of the tract. The defendants' final admission in the pleadings is that the plaintiffs kept the defendants informed of the progress being made to obtain subdivision approval, and that the defendants knew that they would be required to cooperate with the plaintiffs to obtain that approval.

## ISSUES OF FACT

Those allegations which the defendants did not admit, and which form the rest of the bases of the plaintiffs' claims against the defendants, are as follows: The conveyances to the Baragos jointly and to Mildred Barago constituted unapproved subdivisions in violation of the General Statutes and the Newtown subdivision regulations. The Mildred Barago lot was also in violation of the town zoning regulations because it was less than one acre, the minimum area required by those regulations. In July, 1969, the zoning classification of all the land involved was upgraded from one acre to two acres minimum lot size. All the land involved in the case contains substantial "wetlands" under the town's inland wetlands map. Approval of a subdivision by the town wetlands agency is a condition precedent to subdivision approval by the planning and zoning commission. After March 7, 1977, Bolmer spent substantial sums of money to survey the land, to have a subdivision laid out on it, to obtain the engineering work required by the subdivision regulations, by the town road ordinance and by the inland wetlands and watercourse regulations, and obtained complete approval for the subdivision from the town inland wetlands agency on September 17, 1979.

The disputed allegations continued as follows: Immediately after the wetlands approval, the plaintiffs began to seek subdivision approval from the planning and zoning commission, a process which usually involves several submissions before final approval. One of the requirements of the subdivision regulations is the dedication of up to 10 percent of the land area as open space. In lieu of dedicating open space in the proposed subdivision, the plaintiffs dedicated, from another subdivision which they owned, 2.75 acres of land which they could have used for a building lot. The plaintiff R. Eugene Bolmer is the agent and partner of the plaintiff Nufer B. Bolmer in connection with the events described in the complaint.

The final set of the plaintiffs' contested allegations, which form the core of one of the central issues in this case, were as follows: Another subdivision requirement, applicable where land fronts on an existing town highway, as here, is the dedication of sufficient land so that the street right of way is widened to a width of twenty-five feet from the center line of the existing highway. The street lines of Flat Swamp Road and Cemetery Road adjoining the tract are less than twenty-five feet from their center lines. It was thus a condition precedent to subdivision approval that the defendants execute road widening deeds. The defendants are aware of this condition, and have frustrated the plaintiffs in carrying out the contract by refusing to execute road widening deeds as requested by the plaintiffs. There is a reasonable probability that subdivision approval would be obtained if the defendants execute these road widening deeds.

The first count of the complaint is against Mary Kocet only. It is based on breach of the express contract by her refusal to execute the road widening deed needed for subdivision approval. The second count of the complaint is against all the defendants. It asserts an implied

contract under which the plaintiffs are required to use their best efforts to obtain subdivision approval, and the defendants are required to cooperate with them to do so. It claims breach of this implied contract by the defendants' refusal to execute the road widening deeds. The third count of the complaint is against all of the defendants. It asserts that the defendants have been unjustly enriched by virtue of the action of the plaintiffs to obtain subdivision approval, including the wetlands approval already obtained. The plaintiffs sought money damages, an order requiring the defendants to execute the road widening deeds and to authorize the plaintiffs to continue with the subdivision approval process, and specific performance of the written contract.

The defendants asserted three special defenses. The first was that specific performance was barred by General Statutes § 47-33a.[2] The second asserted that Mary Kocet had, pursuant to the contract, elected to declare the contract void because the planning and zoning commission had disapproved the minimum eight lot subdi-

[2] General Statutes § 47-33a provides: "(a) No interest in real property existing under an executory agreement for the sale of real property or for the sale of an interest in real property or under an option to purchase real property shall survive longer than one year after the date provided in the agreement for the performance of it or, if the date is not so provided, longer than eighteen months after the date on which the agreement was executed, unless the interest is extended as provided herein or unless action is commenced within the period to enforce the agreement and notice of lis pendens is filed as directed by section 52-325.

"(b) The interest may be extended only by reexecution of the written agreement or by execution of a new written agreement, provided the agreement, whether reexecuted or newly executed, shall be recorded as directed by sections 47-10 and 47-17. The period provided by this section shall not otherwise be extended, whether because of death, disability or absence from the state or for any other reason. Upon the expiration of an interest the title to property affected by the interest shall not thereafter be considered unmarketable because of the expired interest.

"(c) Nothing in this section shall be construed to limit or deny any legal or equitable rights a party may have under the agreement except the right to have the agreement specifically enforced."

vision plan in July, 1980. The third asserted that any quasi contractual recovery was limited by the contract to reimbursement of one-half of the plaintiffs' survey and engineering costs not exceeding $4000.

At the end of the plaintiffs' case-in-chief, the court granted the oral motion of the defendants to dismiss the plaintiffs' case pursuant to Practice Book § 302.[3] This appeal followed.

## EVIDENCE PRESENTED

"In considering a motion for judgment of dismissal under Practice Book § 302, a trial court is mandated to consider as true the evidence offered by the plaintiff and to draw all favorable and reasonable inferences from such evidence. When ruling on such a motion, the trier's discretion is limited and the parameters within which it may act are narrowed to the extent that it must consider the plaintiff's evidence as true and draw all reasonable inferences in the plaintiff's favor." *Strickland* v. *Vescovi,* 3 Conn. App. 10, 14–15, 484 A.2d 460 (1984). We therefore consider the plaintiffs' evidence in their favor under each count of their complaint.

In addition to those facts admitted by the defendants in their answer, the court had before it the following evidence produced by the plaintiffs, which should be taken in their favor: Newtown adopted zoning regulations in August, 1958. The Kocet property was originally in a minimum one acre zone and in June, 1969, was upgraded to a minimum two acre zone. The Mildred Barago lot was less than one acre, and thus did not conform to either the old or new regulations. Furthermore,

---

[3] Practice Book § 302 provides: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment of dismissal, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

both that lot and the Barago house lot were illegal because they were created without subdivision approval as required by General Statutes § 8-18 and the town subdivision regulations.

At the time of the signing of the contract, the subdivision regulations made wetlands approval from the town inland wetlands agency a condition precedent to applying for subdivision approval. The regulations also permitted the planning and zoning commission to require dedication of 10 percent of the land in the subdivision for open space, and, if the street right of way was less than fifty feet, required dedication of strips along the existing highway to widen the street right of way to not less than twenty-five feet from the highway center line. The regulations also required a ratio of two to one between lots with street frontage and lots having access only by twenty-five foot roadways. From 1977 through 1980, obtaining subdivision approval in Newtown was difficult. All applications were rejected at least once. Two or three rejections were commonplace. Limekiln Brook entered the property at Cemetery Road and exited under Flat Swamp Road to the south of the Baragos' home. The tract was very wet. Furthermore, subdivision layout was difficult because much of the usable property in the tract was cut off from the road by the brook and because the wetlands had to be crossed.

After the execution of the contract, in order to meet the requirements of subdivision consideration, the plaintiffs had to have a property survey prepared, lay out the lots to meet geometric requirements of the zoning regulations, stake the wetlands and the crossings of the wetlands and watercourses, and locate septic systems in order to conduct septic tests. Early on, the plaintiffs discovered that none of the existing boundary lines of the Kocet and Barago house lots, and of the Mildred Barago lot, could be maintained if the par-

ties were to maximize the number of subdivision lots. When this became known, Bolmer conferred with John Kocet and John Barago. John Kocet told Bolmer, in John Barago's presence, that Bolmer could change the lot lines in order to meet this problem and make the three lots conforming. When Bolmer suggested that John Barago might have to be compensated, John Kocet told him that, since the house lot in the Baragos' names had been a gift, compensation was not necessary. John Barago was silent. In this conversation, Bolmer showed both John Kocet and John Barago maps indicating the required changes.

John Barago also indicated his knowledge of the required changes in the lot lines of the Barago house lot in a conversation with the other plaintiff, R. Eugene Bolmer. They discussed building a pond in the back of the house, and John Barago wanted to be sure that his revised house lot would include the pond area. In the first half of 1979, the plaintiffs met with the Kocets and John Barago at the Kocets' house and discussed the subdivision. The plaintiffs left subdivision maps with the Kocets.

In October, 1977, the plaintiffs submitted the first application to the town inland wetlands agency in the form of a so-called short form application. The agency disapproved of the short form and requested a long form, which was submitted in January, 1978. On September 12, 1979, after several agency meetings and requests for more information, two public hearings, and a separate application for one lot which required a re-engineered wetlands crossing, the agency gave final wetlands approval to the subdivision. In testimony before the trial court, the agency chairman explained this twenty-three month delay by describing the parcel as very difficult for approval because of the complexities and difficulties of the wetlands impact.

The plaintiffs thereupon submitted a subdivison approval application to the planning and zoning commission. A requirement of application approval was the 10 percent open space dedication. If this 10 percent were taken from the Kocet tract, one subdivision lot would have been lost. The plaintiffs, therefore, actually dedicated land from another subdivision they owned. The commission accepted this dedication, and title to it has passed to the town.

The town engineer raised numerous objections to the initial plans, which resulted in the plaintiffs' withdrawal of the application and in further work by their engineers. A new application met further opposition by the town engineer and resulted in a denial of the application on July 17, 1980, for seven reasons. This, in turn, resulted in more work by the plaintiffs' engineers to meet these objections. There was testimony by the plaintiffs' surveyor, by a former town engineer, and by a planning and zoning commission member, that the plaintiffs' revised plans met the seven objections, that these plans now met all the requirements of the subdivision regulations, and that, despite the prior disapproval, once the regulations were complied with the commission would approve the subdivision. This set the stage for the controversy concerning the road widening deeds.

There was evidence that when the plaintiffs first submitted the subdivision application to the commission, they incorrectly assumed that they would be able to execute the necessary deeds, widening the highway right of way to twenty-five feet from the center line, after they acquired title to the property from Kocet. They soon realized, however, that the subdivision regulations required that an executed deed be submitted with the application and that, absent such a deed, the application would be considered incomplete and rejected.

In April, 1981, the plaintiffs had prepared the final revised subdivision plan, but in order for the plan to be approved the defendants would have to execute road widening deeds. No road widening deed was required in front of Mary Kocet's home. It was required, however, on her undeveloped property along Cemetery Road, around the corner and along Flat Swamp Road. Furthermore, such deeds were required along the Mildred Barago lot and in front of the Baragos' house lot. The plaintiffs had placed stakes indicating the new boundaries along the Baragos' properties. Despite the plaintiffs' requests for the deeds and explanations of the reasons therefor, the defendants refused to execute the deeds.

There was also evidence that the plaintiffs had spent $23,453 for engineering services and other expenses in connection with the subdivision application. They had obtained inland wetlands approval for the defendants' properties. There was expert testimony that upon subdivision approval, the subdivision lots would be worth $30,000 per lot, and that even without final subdivision approval, a buyer of the land would pay nearly that amount because of the inland wetlands approval and the two previous subdivision submissions. It was also the expert's opinion that, even without final subdivision approval, the eight undeveloped lots shown on the proposed subdivision map would be worth $215,000 because so little additional work would be required for final approval. There was also evidence from the maps to support the inference that, if the Baragos do not participate in the subdivision, two of the proposed lots will be lost and the Baragos' two lots will not conform to the zoning regulations. On this scenario, the expert testified, a buyer would pay $170,000 for the six remaining proposed lots even without subdivision approval. He also testified that Mary Kocet's raw land, consisting of these six proposed lots, was worth $96,000 before

the plaintiffs' efforts toward subdivision approval, indicating an increase in value of $74,000 as a result of their work.

## I

### FIRST COUNT: BREACH OF EXPRESS CONTRACT BY MARY KOCET

The plaintiffs claim that they produced sufficient evidence on which the court could find that the written contract signed by Mary Kocet, interpreted in their favor pursuant to Practice Book § 302, required her to sign the road widening deed along her undeveloped property on Cemetery Road and Flat Swamp Road. Therefore, the plaintiffs argue, the court erred in holding that they failed to make out a prima facie case on the first count. We agree.

"[A]bsent a statutory warranty or definitive contract language, whether there was a contract and the *scope of its terms* are questions of fact to be determined by the trier on the basis of all the evidence." (Emphasis added.) *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 404, 499 A.2d 64 (1985), cert. granted, 198 Conn. 802, 501 A.2d 1213 (1986); see also *Kakalik* v. *Bernardo,* 184 Conn. 386, 393, 439 A.2d 1016 (1981); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981). The evidence, taken in the plaintiffs' favor, was that the only property Mary Kocet would have retained after the subdivision approval was her house lot. The road widening deed which she was asked to execute would not have conveyed any property along that house lot. It would only have conveyed part of the property which she had already agreed to sell to Bolmer. She admitted that she knew that she would be required to cooperate with the plaintiffs in order to obtain subdivision approval. Under these circumstances, a factfinder could reasonably infer that the scope of the terms of the agreement

between the plaintiffs and Mary Kocet included an obligation on her part to execute the road widening deed.

We emphasize the limited nature of this holding on a motion to dismiss. We do not hold that, after a full trial, the court would be required to find that Mary Kocet had such an obligation. See *Strickland* v. *Vescovi*, supra, 15. We hold only that, taking the plaintiffs' evidence as true and drawing all reasonable inferences in their favor, the evidence would reasonably support such a finding. Id. Therefore, a prima facie case was established, and the court erred in granting Kocet's motion as to the first count.

## II

### SECOND COUNT: IMPLIED CONTRACT AS TO ALL DEFENDANTS

### A

In this count the plaintiffs alleged an implied contract whereby they were required to use their best efforts to obtain subdivision approval for the tract and the defendants were required to cooperate with the plaintiffs in that endeavor, and that the defendants breached this contract by refusing to execute the road widening deeds. We first consider the evidence on this count as to Mary Kocet, and conclude that the evidence was sufficient to withstand the motion to dismiss.

"A contract implied in fact may be inferred from words, action or conduct. *Therrien* v. *Safeguard Mfg. Co.*, 180 Conn. 91, 94–95, 429 A.2d 808 (1980)." *Alpha Crane Service, Inc.* v. *Capitol Crane Co.*, 6 Conn. App. 60, 81, 504 A.2d 1376 (1986). The existence and scope of such a contract is a question of fact for the trier, to be determined from all the evidence. *Finley* v. *Aetna Life & Casualty Co.*, supra. A contractual undertaking carries with it the implied obligation not to obstruct the performance of the other party to the contract.

*Hartford Electric Applicators of Thermalux, Inc.* v. *Alden,* 169 Conn. 177, 182–83, 363 A.2d 135 (1975).

Mary Kocet admitted that she knew her cooperation was required to obtain the subdivision approval which her late husband, and predecessor in title of an undivided one-half interest, had requested Bolmer to obtain, and which was the objective of the written contract she and her late husband had entered into with Bolmer. She also admitted that she had been kept informed of the progress being made to obtain that approval. There was ample evidence of the great amount of expense and work of the plaintiffs involved in that progress. The road widening deeds sought by the plaintiffs would have required her to convey only property which her contract obligated her to sell to the plaintiffs. Under these circumstances, it was a permissible inference that she had an implied contractual obligation to cooperate with the plaintiffs in the subdivision approval process, which obligation included executing the road widening deeds. A prima facie case was established, and the court erred in granting Kocet's motion to dismiss as to the second count.

### B

We next consider the evidence under the second count as to John Barago. We conclude that it was sufficient to establish a prima facie case of a breach of an implied contract to execute the road widening deeds.

There was evidence that in the latter half of 1977 Bolmer explained to John Kocet and John Barago that, in order to maximize the number of subdivision lots and meet the aims of the Kocets to obtain subdivision approval, the lot lines of the Kocet and Barago house lots would have to be changed. There was also evidence that John Kocet agreed to this in John Barago's presence, that he stated there was no need to compensate the Baragos for this, and that John Barago remained

silent in the face of these statements. In addition, in a different conversation John Barago requested Bolmer to retain, within his proposed revised house lot, the area in which he wanted to build a pond. John Barago admitted in the pleadings that Bolmer and the Kocets had agreed that the subdivision would include a legally conforming and enlarged lot for the Baragos, that he knew his cooperation was needed for the subdivision approval, and that he had been kept informed of the progress toward that approval. There was ample evidence of the expense and work of the plaintiffs involved in that progress. There was also evidence that the Barago house lot was illegally created and that the revised lot lines would render it conforming. Thus, there was sufficient evidence that John Barago had impliedly agreed to cooperate with the plaintiffs in the subdivision process, and a factfinder could also have reasonably inferred that this agreement carried with it the obligation to execute the road widening deeds which were necessary for subdivision approval. A prima facie case was established. The court erred in granting John Barago's motion to dismiss as to the second count.

C

The evidence under this second count is insufficient, however, as to Mildred Barago. She was neither a signatory to the written contract nor present at any of the conversations. She did not participate in any of the subdivision negotiations. There is no evidence of any words or conduct by her to support an implied in fact contractual undertaking by her.

The plaintiffs argue that her status as John Barago's wife permits a reasonable inference that his knowledge was imparted to her. We disagree. Just as marital status does not prove an agency relationship; *Botticello* v. *Stefanovicz,* 177 Conn. 22, 26, 411 A.2d 16 (1979);

marital status in and of itself does not prove that the knowledge of one party to the relationship was conveyed to the other, at least as to the particular kind of commercial land transaction involved in this case. A reasonable factfinder could not infer solely from John Barago's silence, words and conduct as described above, that his wife had made the same implied contract as he did. The court did not err in granting Mildred Barago's motion to dismiss as to the second count.

## III

### THIRD COUNT: UNJUST ENRICHMENT AS TO ALL DEFENDANTS

#### A

Although the plaintiffs did not specifically label this count as being in the alternative to the first and second counts, it is clear that it is meant to provide an alternative basis for recovery in the event of a failure of proof under those counts. Unjust enrichment applies when justice requires compensation " 'to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.' 5 Williston, Contracts (Rev. Ed.) § 1479." *Cecio Bros., Inc.* v. *Greenwich,* 156 Conn. 561, 564, 244 A.2d 404 (1968); *Montanaro Bros. Builders, Inc.* v. *Snow,* 4 Conn. App. 46, 53, 492 A.2d 223 (1985).

Unjust enrichment is a very broad and flexible equitable doctrine; *Cecio Bros., Inc.* v. *Greenwich,* supra; which has as its basis that " 'it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff.' " *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597, 489 A.2d 1034 (1985). Its three basic requirements are (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the

benefits, and (3) that the failure of payment was to the plaintiffs' detriment. *Montanaro Bros. Builders, Inc.* v. *Snow,* supra. All the facts of each case must be examined to determine whether the circumstances render it "just or unjust, equitable or inequitable, conscionable or unconscionable," to apply the doctrine. *Cecio Bros., Inc.* v. *Greenwich,* supra, 565.

Applying this flexible standard, we conclude that the plaintiffs' evidence as to Mary Kocet was sufficient to withstand her motion to dismiss. In order to carry out their obligations under the contract with her, the plaintiffs spent $25,453, and conveyed 2.75 acres of their land to the town. As a result of the plaintiffs' work, she now has property which is quite near final subdivision approval and has increased in value by tens of thousands of dollars. This evidence is clearly sufficient to make out a prima facie case of unjust enrichment.

B

The evidence of unjust enrichment of John Barago was insufficient, however. His sole interest in the entire transaction was as a one-half owner of the Barago house lot. The plaintiffs do not point to any evidence indicating any increase in value of that lot as a result of their actions. Thus, there is no evidentiary basis for an award of damages based on unjust enrichment against John Barago. This conclusion also applies to Mildred Barago as the other one-half owner of their house lot.

It is true that this evidentiary insufficiency is not the basis on which the trial court dismissed the plaintiffs' unjust enrichment count against the Baragos. We are free, of course, to sustain a trial court's judgment on a basis different from that used by the trial court. *Bencivenga* v. *Zoning Board of Appeals,* 2 Conn. App. 384, 387, 478 A.2d 1049 (1984).

## C

We reach a similar conclusion as to Mildred Barago as the owner of the Mildred Barago lot. The plaintiffs' claim of benefit to her is that, if their contract with Mary Kocet is construed as requiring them to transform that lot into a legally conforming subdivision lot, namely lot number four of the proposed subdivision, their efforts have given her such a lot with wetlands approval. We disagree.

Even if we assume arguendo that their construction of the contract is permissible, there is no evidentiary basis upon which to measure an award of damages based on the amount of her enrichment. Approximately two-thirds of her existing lot covers a part of lot number four; the balance of lot number four comes from property of Mary Kocet. The plaintiffs do not point to any evidence of the increase in value of the Mildred Barago lot as a result of their efforts, nor is there any way for a factfinder to allocate the general increases in values supplied by the experts, described above, between the existing Mildred Barago lot and the proposed lot number four. Thus, there is no basis for an award of damages based on unjust enrichment against Mildred Barago. Cf. *Preisner* v. *Illman,* 1 Conn. App. 264, 269, 470 A.2d 1237 (1984).

## IV

The defendants argue that the trial court's judgment should be sustained because the contract with Mary Kocet did not comply with the statute of frauds; General Statutes § 52-550; regarding contracts for the sale of real estate. It is true that the court in its oral memorandum of decision appears to have relied, in part at least, on that statute, focusing on the purported lack of specificity in the closing date. That reliance by the trial court, however, and the defendants' similar reliance in this court, are misplaced.

First, the defendants did not raise the statute of frauds in their pleadings. They admitted that paragraph of the plaintiffs' complaint which alleged the written contract executed between Bolmer and the Kocets and which incorporated by reference a copy of the contract annexed to the complaint. Practice Book § 164 requires at least a denial in order to take advantage of the statute of frauds. It provides that certain defenses, such as "the statute of limitations and res judicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds . . . ." Id.

Second, even if we assume arguendo that General Statutes § 52-550 was properly in the case pursuant to the court's ruling on the motion to dismiss, there was evidence to afford a reasonable basis for a finding of part performance by the plaintiffs sufficient to take the transaction out of the statute of frauds. See *Breen* v. *Phelps,* 186 Conn. 86, 95–97, 439 A.2d 1066 (1982).

There is error in part. With regard to the defendant Mary Kocet, the judgment is set aside as to all three counts. With regard to the defendant John Barago, the judgment is set aside as to the second count, and there is no error as to the third count. With regard to the defendant Mildred Barago, there is no error. The case is remanded for a new trial as to the defendant Mary Kocet, on all three counts, and for a new trial as to the defendant John Barago, on the second count.

In this opinion the other judges concurred.