JAMES R. KIMBRELL *v.* FRANK A. ROSSITTO ET AL.
(3205)

FRANK A. ROSSITTO ET AL. *v.* OSLO DEVELOPMENT
COMPANY, S.A., OF THE REPUBLIC
OF PANAMA ET AL.
(3268)

HULL, BORDEN and DALY, Js.

Argued December 11, 1985—decision released April 1, 1986

*John J. Carta, Jr.*, for the appellant in the first case (plaintiff in the first case).

*Nancy G. Radoff*, for the appellant in the second case (named defendant in the second case).

*Sebastian N. Giuliano*, for the appellee (named defendant in the first case, plaintiff in the second case).

*Frank H. Santoro,* assistant United States attorney, with whom, on the brief, was *Alan H. Nevas,* United States attorney, for the appellee (intervening defendant United States in both cases).

HULL, J. These two cases involve an ill-fated drug smuggling venture which rivals any current bestseller in its cast of colorful characters and its high seas intrigue. The actions were tried together and combined on appeal because the relationships and events giving rise to each case overlap substantially. In the first action, *Kimbrell* v. *Rossitto,* Kimbrell sued Rossitto to recover for the loss of a forty-two foot, 1975 Westsail cutter rig sailboat. Rossitto, in the second case, *Rossitto* v. *Oslo Development Co.,* sought the return of certain real property located in Connecticut which he claimed Oslo obtained by use of duress. The court found for Rossitto in both actions. Kimbrell and Oslo now appeal from the judgments rendered in their respective cases. Kimbrell claims error in the court's factual findings while Oslo challenges certain of the court's evidentiary rulings. We conclude that the trial court's actions were legally and logically correct and its factual determinations not clearly erroneous, and, accordingly, we find no error.

The trial court found the following facts: The plaintiff Kimbrell and a childhood friend purchased a forty-two foot sailboat intending to use it to start a charter business in Florida. Neither of the two men had any experience in chartering boats, and the venture was not successful. Kimbrell, who had no other job, lived on the boat, the Tamure, and spent his time there entertaining. During this period, Kimbrell met Rossitto and the two men became friendly. On one occasion, Rossitto showed Kimbrell a large supply of marihuana, and later he offered to help Kimbrell make some money. Kimbrell thereafter began working for Rossitto collecting debts

from drug dealers. By this time, Kimbrell's friend wanted to sell his one-half interest in the Tamure, and Kimbrell, with Rossitto's financial assistance, purchased that interest and also paid the arrearage on a note he had taken out to finance the boat originally. Kimbrell then executed a sales agreement transferring a one-half interest in the boat to Rossitto. Rossitto later equipped the Tamure with sophisticated machinery, and made other extensive improvements on the boat.

At the time he met Kimbrell, Rossitto was a wholesaler of illegal drugs. His supplier was a man named Bill Ellswick. Ellswick advanced Rossitto drugs for some time until Rossitto owed him over a million dollars. When Ellswick first began pressuring him for repayment, Rossitto replaced Kimbrell as his collector. He needed to raise as much money as he could, as fast as possible, and he felt that Kimbrell was not effective at eliciting payment. Kimbrell stopped working and returned to his home in Mississippi after agreeing with Rossitto that they would share the use of the Tamure equally during the year.

The change in collectors did not, as Rossitto had hoped, generate the money he needed, and the pressure from Ellswick was building. Two of Ellswick's collectors beat Rossitto to reinforce the need for immediate repayment. Rossitto began to fear for his safety and anxiously searched for ways to raise the money. Finally, he decided to bypass Ellswick and obtain drugs directly from growers in Colombia with the hope that he would reap a large profit which he could then use to pay Ellswick.

Rossitto decided to use the Tamure to pick up the drugs in Colombia, and he made the necessary preparations for the trip. Just before the Tamure was ready to sail, however, the captain called Kimbrell in Mississippi and told him the boat was going to the islands.

Kimbrell immediately called Rossitto for an explanation. Rossitto told him not to worry, that the Tamure was "going south," an expression used in the drug trade to mean making a drug run to South America, and that he would get his cut. Kimbrell said nothing further.

The Colombia venture was a disaster. Rossitto's contacts could not deliver the marihuana. The crew members, including a man named Dana Stipes, were arrested and imprisoned in Colombia for approximately one year when they brought the boat from international waters into Colombian waters. The boat was impounded and sank sometime later. Rossitto was still in debt to Ellswick.

Approximately one year later, Ellswick sent Stipes, who was then working for him, to recover the money Rossitto owed. Stipes began to take Rossitto's possessions: a Rolex watch, gold jewelry, a Maserati, and land in Aspen, Colorado. Rossitto did not resist until Stipes attempted to obtain Rossitto's Connecticut property, the Deep River Plantation, a six and one-half acre estate on the Connecticut River in the town of Deep River. By that time, Kimbrell had already initiated his suit against Rossitto based on the loss of the Tamure, and he had obtained a $300,000 prejudgment attachment on the property. When the attachment was lifted for a brief time, Rossitto transferred the property to Lucille and Nuzio Coviello, his mother and stepfather, with the understanding that they would reconvey it to him at his request. Stipes then called Rossitto's family and told them that if they did not sign the property over to him, their son's life would be in danger. They agreed to convey the property and signed a warranty deed transferring it to Oslo Development Company, a Panamanian Corporation.

Rossitto had, during this period, remained involved in drug smuggling activity. Eventually, he was arrested

and convicted on drug related charges. He spent approximately one year in federal prison, and when he was released began to cooperate with drug enforcement officials. He entered the federal witness protection program, was relocated, and was given a new identity. At this point, Rossitto sought to recover Deep River Plantation from Oslo and instituted the other suit involved in this appeal.

## I

### KIMBRELL *v.* ROSSITTO

In this action, Kimbrell sued Rossitto for the loss of the Tamure. He claimed four grounds for imposing liability on Rossitto: (1) breach of express contract based on Rossitto's failure to return the boat and his failure to keep it in the territorial waters of the United States; (2) conversion; (3) negligence; and (4) breach of contract based on Rossitto's failure to pay one-half of the mortgage on the boat.[1] Rossitto counterclaimed in two counts, alleging that Kimbrell failed to pay his proportional share of the maintenance costs for the boat.[2] The United States government, claiming an interest in the Deep River Plantation because Rossitto was delinquent in tax payment and because he allegedly purchased the land with money made from the illegal sale of drugs, moved to be made a third party defendant. That motion was granted by the court, *Vasington, J.,* prior to trial.

The court found against Kimbrell on his complaint and against Rossitto on his counterclaim. In denying

[1] Kimbrell also brought a fifth count against Lucille and Nuzio Coviello, Rossitto's mother and stepfather, alleging a fraudulent conveyance of the Deep River Plantation from Rossitto to the Coviellos. This count was withdrawn after the Coviellos assigned any interest they had in the property to Rossitto.

[2] Rossitto filed a third party complaint impleading, as third party defendants, members of the boat's crew: Dana Stipes, William Higgins and Daniel Monteferante. The third party complaint was dismissed as to Stipes by the court, *Spallone, J.,* on the basis of its finding that it did not have in personam jurisdiction over Stipes. Higgins and Monteferante did not appear.

Kimbrell recovery, the court relied on its findings that he had been aware of and acquiesced in Rossitto's use of the Tamure to smuggle drugs. The court decided against Rossitto on his counterclaim, finding that he had neither expected Kimbrell to contribute to the Tamure's maintenance, nor asked him to do so.

Kimbrell now appeals from the judgment rendered against him claiming, essentially, that the court's factual findings are incorrect. Specifically, he attacks four of the court's findings: (1) that Rossitto agreed to make improvements to the Tamure sufficient to make up the difference between his original investment of $25,000 and the value of the boat; (2) that Kimbrell contributed nothing to the maintenance and operation of the Tamure; (3) that he knew of and acquiesced in Rossitto's using the boat to smuggle drugs; and (4) that Rossitto was a more credible witness than Kimbrell. Kimbrell also claims that the court erred by failing to find that he and Rossitto formed an express contract to use the Tamure for pleasure only, the breach of which entitled Kimbrell to damages.

This court has repeatedly stated that it will not retry the facts of a case. *Glasson* v. *Portland,* 6 Conn. App. 229, 233–34, 504 A.2d 550 (1986); *Jones* v. *Litchfield,* 1 Conn. App. 40, 42, 467 A.2d 936 (1983), cert. denied, 192 Conn. 802, 470 A.2d 1218 (1984). Where the trial court's factual findings are challenged on appeal, this court performs an extremely limited review solely to determine whether the challenged findings are clearly erroneous. *Pulaski* v. *Ledwith,* 5 Conn. App. 629, 631, 501 A.2d 396 (1985); *Rodziewicz* v. *Giguere,* 5 Conn. App. 293, 295, 497 A.2d 1025 (1985). If they are not, they will not be disturbed. *Pulaski* v. *Ledwith,* supra. Kimbrell has not shown, nor has our review of the record disclosed, that the court's factual findings were not supported by the evidence.

Kimbrell first claims that the trial court's finding that Rossitto fully performed the agreement through which he acquired a one-half interest in the Tamure was based on a clearly erroneous finding: its finding that, in consideration for the transfer, Rossitto agreed to make up the difference between the $25,000 he had already invested and the value of the boat. Kimbrell asserts that, contrary to the court's finding, the parties agreed that Rossitto would invest enough to double the Tamure's value.

It is somewhat unclear why Kimbrell presses this argument. An agreement to double an item's value is the same as an agreement to invest the equivalent of its value. For example, at the time the agreement in question was made, the Tamure was worth approximately $90,000. To double the boat's value, therefore, Rossitto would have had to contribute $90,000. To make up the difference between the amount he had already invested ($25,000) and the value of the Tamure ($90,000), Rossitto would have been required to spend, *in total,* the value of the boat: $90,000. The only difference between Kimbrell's version of the agreement and the court's finding is semantic. Under either formulation, the court's or Kimbrell's, Rossitto's financial commitment was to total $90,000. The court's finding was, therefore, not clearly erroneous.

Nor was the court's finding that Rossitto performed his contractual obligation clearly erroneous. Kimbrell argues in his brief that Rossitto invested enough in the Tamure so that after the improvements were made, their respective shares were approximately equal. He also introduced evidence to show that the value of the boat after the improvements was close to $200,000. He therefore concedes that Rossitto invested at least $100,000. Since it is undisputed that the value of the boat before improvements was approximately $90,000, it is clear that even under Kimbrell's interpretation of

the agreement and the facts, Rossitto did double the boat's value, and thereby fully performed any contractual obligation he had.

In his second argument, Kimbrell attacks as clearly erroneous the court's finding that he paid nothing for the maintenance and operation of the Tamure. The evidence fully supported this finding. During trial, Kimbrell testified that his boat chartering venture was a financial failure from the beginning, and that he was running short of funds. He also testified that he wanted Rossitto to purchase an interest in the Tamure because Rossitto could then absorb the costs of maintaining the boat. Rossitto testified that he paid the captain's salary. Given this evidence, it is difficult to understand how Kimbrell can even claim that the finding was clearly erroneous. It was not.

What Kimbrell is really arguing in this claim of error is that the court was not entitled to credit Rossitto's testimony as to the amount he spent improving the Tamure without requiring that he introduce tangible evidence to document the amount. There is no merit to this claim. Rossitto testified at length and in detail concerning the improvements he made on the Tamure. This evidence, which the court was free either to accept or to reject; *Morande* v. *Newman Lincoln-Mercury, Inc.,* 5 Conn. App. 423, 499 A.2d 78 (1985); was sufficient to support the court's finding as to the relative amount Rossitto and Kimbrell spent on the Tamure. There was no requirement that Rossitto introduce additional evidence.

To support his claim, Kimbrell relies on *Bertozzi* v. *McCarthy,* 164 Conn. 463, 468, 323 A.2d 553 (1973). That case, however, stands for the proposition that damages may not be based on speculation but must be supported by evidence. *Bertozzi* and its progeny are not relevant, however, in a case such as this, where

no damages were awarded. Had the court found for Rossitto on his counterclaim, then the adequacy of his proof of damages might be an appropriate ground for claiming error. Under the circumstances present in this case, the court did not err in crediting Rossitto's testimony.

Kimbrell also claims that the trial court erred by finding that he knew the Tamure was going to be used for drug smuggling and that he acquiesced in its use for these purposes. There was, however, substantial evidence upon which the trial court could reasonably base the challenged finding. Kimbrell testified that he was aware that Rossitto was a drug wholesaler and that he had worked for Rossitto in his drug business for approximately eight months. He knew that Rossitto had made substantial changes to the Tamure and that the changes made the boat capable of cruising over long distances. According to Kimbrell, Rossitto put a lot of new equipment on the boat: sonar, a generator, a desalinization unit, a bigger winch, a new mast, spinnaker rigs and an outrigger. In light of this testimony, it would not have taken the acumen of Elliot Ness to infer, as did the trial court, that Kimbrell "saw and allowed [the Tamure's] transformation into a boat that could be used for smuggling." This inference was entirely reasonable, and the resulting finding was not clearly erroneous.

On the basis of this testimony alone, the trial court could have concluded that Kimbrell knew the Tamure would be used for illegal purposes. There was, however, additional evidence supporting this conclusion. Kimbrell testified that the captain of the Tamure called to tell him that the boat was "going south," although it was not his habit to call and report on the Tamure's movement. Kimbrell, according to his own testimony, was sufficiently concerned to call Rossitto for more information. Rossitto testified that he also told Kimbrell the

boat was "going south," and not to worry since he would be compensated. This testimony provided more than ample support for the court's finding that Kimbrell acquiesced in Rossitto's use of the boat to smuggle drugs.

In his fourth claim of error, Kimbrell attacks the trial court's conclusion that Rossitto's testimony was more credible than his testimony. "Nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. *Morgan* v. *Hill*, 139 Conn. 159, 161, 90 A.2d 641 (1952). Our function is restricted to determining whether the facts found are supported by the evidence or whether the facts as found are clearly erroneous in light of the evidence and the record as a whole. *Branigan* v. *Cohen*, 3 Conn. App. 580, 581, 490 A.2d 1019 (1985)." *Morande* v. *Newman Lincoln-Mercury, Inc.*, supra, 423–24.

The record in this case discloses the following. Rossitto is a federally protected witness living under an assumed identity, and accordingly is not at liberty to enjoy any benefits which might accrue to him should he prevail in this lawsuit. Additionally, the Deep River Plantation is the subject of a federal forfeiture action that has been stayed pending resolution of this appeal. In view of these facts, the court reasonably could have determined that Kimbrell had a greater incentive to fabricate than did Rossitto. Having reviewed the record carefully, we see no reason to disturb the court's conclusions as to credibility.

Kimbrell's final argument is that the court erred by failing to find that Rossitto breached the parties' agreement to use the Tamure for pleasure only. This allegation was not, however, contained in Kimbrell's complaint. Nor was it ruled on by the trial court. "We review this case on the theory upon which it was

tried and upon which the trial court decided it. See *Machiz* v. *Homer Harmon, Inc.*, 146 Conn. 523, 525, 152 A.2d 629 (1959); *Cole* v. *Steinlauf,* 144 Conn. 629, 632, 136 A.2d 744 (1957); Maltbie, Conn. App. Proc. § 42." *Fuessenich* v. *DiNardo,* 195 Conn. 144, 151, 487 A.2d 514 (1985). Because the theories raised at trial did not include the one the plaintiff now attempts to raise, we do not consider this ground of error. Practice Book § 3063.

## II

### ROSSITTO *v.* OSLO DEVELOPMENT CO.

In this action, Rossitto brought suit against Oslo and against Lucille and Nuzio Coviello, his mother and stepfather, based on the Coviellos' conveyance of Deep River Plantation to Oslo. In his first count, Rossitto alleged that the Coviellos conveyed the property without his authority. In the second count, Rossitto claimed that Oslo obtained the property by falsely representing to the Coviellos that Rossitto had agreed to the conveyance. Rossitto asserted in his third count that Oslo obtained the Deep River Plantation by using duress. Rossitto sought to have his conveyance to the Coviellos and their conveyance to Olso set aside. Oslo counterclaimed in two counts, alleging that Rossitto had interfered with its enjoyment of the property and that he had slandered its title. Oslo also filed a cross complaint against the Coviellos asserting that they conveyed unmarketable title to Oslo's detriment. The Coviellos were deleted as party defendants on their motion and added as party plaintiffs. As party plaintiffs, the Coviellos filed a complaint against Oslo alleging duress and undue influence.[3] The federal government was permitted to enter the case as a third party defendant.

The court found that Oslo had obtained the Deep River Plantation by using duress. It declared the con-

---

[3] The Coviellos also alleged that Oslo had falsely imprisoned them. This count of the complaint was struck by the court, *Edelberg, J.*

veyance null and void, and rendered judgment for Rossitto on his complaint and on Oslo's counterclaim. The court also rendered judgment for the Coviellos on Oslo's cross complaint while dismissing their complaint against Oslo. Oslo thereafter filed this appeal.

Oslo now claims that the court erred in three respects: (1) in admitting into evidence Rossitto's testimony about Ellswick's involvement in the drug trade, which Oslo claims constituted inadmissible hearsay; (2) in admitting a translation of a Colombian judicial document without proper authentication; and (3) in refusing to award Oslo reimbursement for money it allegedly expended improving the Deep River Plantation. Each of these arguments is unavailing.

In its first claim, Oslo argues vigorously that the court erred by allowing Rossitto to testify about the illegal marihuana trade and about Bill Ellswick's involvement in it. According to Oslo, this testimony was inadmissible for several reasons: the testimony was hearsay; Rossitto did not demonstrate sufficient personal knowledge to be deemed to be competent to testify on the topic; and the evidence was irrelevant. Oslo claims that the admission of this testimony constituted harmful error because, through this testimony, Rossitto was allowed to offer his opinion that Oslo was an alter ego for Ellswick. According to Oslo, Rossitto thereby provided a motive for Oslo's alleged use of duress to obtain the property: to collect Rossitto's drug debt to Ellswick.

Rossitto contends that the challenged testimony was not hearsay, and that it was relevant. He also asserts that his competence to testify on the subject of drug dealing was demonstrated. The United States agrees with these arguments but also claims that Oslo did not except to the court's ultimate ruling on its objections and therefore failed to preserve the court's ruling for review. Oslo's counsel argues that she did object to the

testimony when it was initially offered, and that she renewed this objection later. She claims that she did take an exception when the court overruled her renewed objection.

A somewhat lengthy review of the sequence of events in question is necessary to resolve this dispute. It was during Rossitto's testimony that the challenged evidence was admitted. Rossitto began to discuss Ellswick, and he stated that Ellswick had made his way up through the ranks of organized crime. At this point, Oslo's counsel objected, claiming that the testimony was hearsay and that it called for a "value judgment." The court indicated that it would limit Rossitto's testimony to areas in which he could demonstrate personal knowledge and to areas which did not call for hearsay testimony. The court then asked Oslo's counsel if she was pressing her objection. Counsel responded that she was because of her concern that Rossitto was testifying as to "conclusions and value judgments." The court responded that it would allow no conclusions or opinions but only testimony as to what Rossitto had seen personally. Oslo's counsel responded that she had "no problem with that" but moved that Rossitto's prior answer be stricken. The court then asked whether the objection was based on lack of foundation, and counsel responded that at the very least she felt a proper foundation had not been laid. The court then told Rossitto's counsel to attempt to lay a foundation for the testimony. No objection was made nor was any exception taken to this ruling.

Rossitto then began to testify about Ellswick's lifestyle. He spoke at some length about his own drug dealing: the amount of marihuana he had purchased from Ellswick, the amount he had paid for the marihuana, the amount he charged for the marihuana and the profit he realized from one sale. After Rossitto had testified in this fashion for some time, Oslo's counsel

objected on the basis of relevancy. The court overruled the objection and Oslo's counsel took an exception to this ruling.

Under Practice Book § 288, counsel is required, when making an objection to the admission of evidence, to state distinctly the grounds for the objection and to take an exception to the court's ruling on that objection. Section 288 specifically provides that "[a]n exception to the ruling *must* be taken in order to make it a ground of appeal." (Emphasis added.) The objection-exception rule performs an important function: it requires counsel to make an evidentiary objection clear at a time when the trial court can take corrective action and thereby avoid unnecessary retrials. See *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984).

Here, the requirements of Practice Book § 288 were not satisfied. Oslo neither objected to, nor took an exception to, the court's final ruling on the admissibility of the testimony that lead to Oslo's hearsay objection. When the court told Rossitto's counsel to proceed with his foundation for the testimony and Oslo did not object, the court could reasonably have concluded that it had satisfied Oslo's concerns about the testimony.

Oslo's counsel claims that she preserved this ground of error by objecting and excepting to Rossitto's later testimony about his lifestyle and the cost of marihuana. She asserts that this objection was merely a renewal of his former hearsay objection. We must reject this claim. Counsel's relevancy objection did not, under these circumstances, alert the trial court to the present claim that the evidence was inadmissible hearsay. The only objection and exception properly taken was to the court's ruling on counsel's relevancy objection, entirely different grounds from those now alleged. Accordingly, we decline to rule on this claim of error.

Oslo's second claim is that the trial court erred by admitting into evidence an unsigned, uncertified translation of a Colombian document. At trial, Oslo objected to the admission of the document and duly excepted when the court overruled its objection and admitted the document. Oslo now argues that the admission of the document constituted reversible error and it reasserts one of the grounds on which it relied in making its objection at trial, that the document was not properly authenticated.

The United States asserts, in the face of Oslo's strong protestation to the contrary, that the document was properly authenticated by Dana Stipes. Rossitto argues that the translation was admissible for the limited purpose of impeaching Stipes even if it was not properly authenticated. Both Rossitto and the United States contend that any possible error caused by the admission of the document was harmless since the contents were cumulative of other testimony.

It is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative of other validly admitted testimony. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 391, 461 A.2d 422 (1983). Here, the evidence contained in the document merely repeated Stipes' and Rossitto's testimony. The document purported to impose a fine on the Tamure's crew for an unnamed offense. Stipes himself testified that he was found guilty of violating Colombian water space and of possession of firearms. It described the finding of the Colombian officials who searched the Tamure that, contrary to Stipes' testimony at trial, the Tamure was in good working condition except for a damaged propeller. Speculation that the Tamure was in Colombian waters in relation to the illegal drug trade and not, as the crew claimed, for necessary repairs for damage

the Tamure sustained en route to Panama was incorporated into the document. Rossitto, who sent the Tamure to Colombia, gave testimony corroborative of these facts and speculation. He testified that the Tamure went to Colombia to transport drugs back to the United States. The document also asserted that there were guns aboard the boat and charts of Colombian waters, which Stipes himself readily admitted.

The Colombian document was only a minor part of the total evidence showing why the Tamure was in Colombia. Accordingly, even if we were to determine that the trial court erred in admitting the evidence, we would not disturb the judgment on this basis. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, supra, 391. We therefore decline to rule on the validity of the trial court's decision to admit the translation.

Oslo's final argument is that the trial court erred by not ordering Rossitto to repay Oslo for the money it spent on the Deep River Plantation. In support of this claim, Oslo notes that the remedy fashioned by a court of equity should be designed to put the parties in the position they would have been in had no damage occurred. It argues that the court's failure to order Rossitto to repay the $67,588.33 it spent paying off Rossitto's mortgage on the land, violates this equitable principle and unjustly enriches Rossitto.

"Unjust enrichment applies when justice requires compensation to be given ' "for property or services rendered under a contract, and no remedy is available by an action on the contract." 5 Williston, Contracts (Rev. Ed.) § 1479.' *Cecio Bros., Inc.* v. *Greenwich,* 156 Conn. 561, 564, 244 A.2d 404 (1968); *Montanaro Bros. Builders, Inc.* v. *Snow,* 4 Conn. App. 46, 53, 492 A.2d 223 (1985)." *Bolmer* v. *Kocet,* 6 Conn. App. 595, 612, 507 A.2d 129 (1986). Here, there was neither an

express contract nor an implied in fact contract under which Oslo claims a right to recover. Rather, on equitable grounds, it makes its claim that this court should find an implied in law contract under which Rossitto would be required to compensate Oslo.

"Unjust enrichment is a very broad and flexible equitable doctrine; *Cecio Bros., Inc.* v. *Greenwich,* supra; which has as its basis that ' "it is contrary to equity and good conscience for [one party] to retain a benefit which has come to him at the expense of the [other party]." ' *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597, 489 A.2d 1034 (1985)." *Bolmer* v. *Kocet,* supra, 612. When deciding a claim of unjust enrichment, "[a]ll the facts of each case must be examined to determine whether the circumstances render it 'just or unjust, equitable or inequitable, conscionable or unconscionable,' to apply the doctrine. *Cecio Bros., Inc.* v. *Greenwich,* supra, 565." Id. Further, it must be remembered that "balancing of equities is a matter which falls within the discretion of the trial court." *Montanaro Bros. Builders, Inc.* v. *Snow,* supra, 54.

Here, the trial court effectively found that one drug dealer, acting under the disguise of Oslo Development Company, used death threats to strong-arm another drug dealer into conveying a piece of land. Given these findings, which we have held are fully supported by the evidence, it is difficult to imagine how justice or equity require that Oslo be reimbursed for its expenditures. The trial court did not abuse its discretion by refusing to pay Oslo for the money it spent protecting its ill begotten gains.

There is no error on either appeal.

In this opinion the other judges concurred.