[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises out of a real estate transaction between the plaintiff — purchaser and the defendants — sellers. The sale was negotiated on behalf of the defendants by their broker, Ella Tobelman, a real estate broker who acted as and was the defendants' agent throughout the transaction.
Prior to and during the 1930's and early 1940's, a portion of the subject property had been used as a motor vehicle gas station by the defendants' predecessor in title. At no time prior to the transfer of title did the defendants or their agent disclose this prior use to the plaintiff, nor was any inquiry made. The plaintiff was not made aware of the existence of two underground gasoline storage tanks located on the property until some number of months subsequent to the transfer of title, when the plaintiff accidentally learned of the prior gas station use and the existence of underground gasoline tanks. At said time the plaintiff had commenced extensive renovations on the house.
This action was commenced by a complaint alleging in the first count a prior gasoline station usage of the property; that the defendants knew at all relevant times of this prior use; that the plaintiff took title by warranty deed on December 10, 1987 and that the defendants failed to submit a negative declaration to the plaintiff as required by Conn. General Statutes Sec. 22-134a (b). Further that the defendants failed to inform, notify or in any other way communicate with the plaintiff that the subject property was used as a gasoline and motor vehicle station. As will be noted subsequently herein, it is this allegation amongst the others that brings into consideration the Department of Environment Protection regulation 22a-449 (f)(1).
In count two of said complaint the plaintiff alleges, again, a failure to inform, notify or in any other CT Page 4548 way communicate to the plaintiff that the subject property had been used as a gasoline or motor vehicle service station and as a result of this the plaintiff claims that title to said property is unmarketable.
In count three of said complaint it is alleged again that the defendants failed to notify or communicate the prior gasoline and motor vehicle service station usage of the property and that as a result thereof the defendants fraudulently concealed said material facts from the plaintiff and that the value of the property was greatly diminished.
In count four of said complaint the plaintiff alleges and complains that the defendants intentionally concealed the problems with the well water system supplying said house and that as a result thereof the value of the property has been greatly diminished.
With respect to counts two and three, the court finds the evidence insufficient to establish that the title to said property is unmarketable or that the value of said property has been greatly diminished. Accordingly, the finding of the court with respect to these two counts is that the evidence fails to furnish a basis for relief as claimed therein.
With respect to count four which alleges fraudulent concealment of problems with the well supplying fresh water to the house, it is recognized that in order to form a basis for relief the plaintiff has the burden of proving allegations under this count by clear and convincing evidence. The court finds that the evidence does not sustain the burden of proving, even by a fair preponderance of the evidence, that the defendants fraudulently concealed any negative well condition. The court finds that some ten years earlier the plaintiffs had had some problems with the well which were allocated to a failure of a foot valve which they repaired and fixed. At that said time the well, which is a shallow or dug well, was dug a little bit deeper. Since that time there have been no problems with a dug well and that any water supply problems that have existed on the premises had to do with the stream running in the rear of the property that supplied water to irrigate the outdoor garden, and not any system of water that supplied well water to the house. Said problems with the rear river were undoubtedly caused by or due to over use of the upland supply of water and that remedial actions through the appropriate town agencies had apparently taken care of that problem. CT Page 4549
Allegations under counts one and two having to do with the failure of the defendants to notify the plaintiff of the prior gasoline station use of the property represent the remaining viable claim of the plaintiff. There is no question in the court's mind, and the evidence fully establishes, that the defendants knew of the existence of these underground gasoline storage tanks. The pumps that utilized said storage tanks were dug up and removed from the premises, probably in the mid 1940's, or put in another way, some 45 years earlier. Mr. Marcinek testified, and, indeed, the inference from the testimony of the agent is and the court finds he just plain forgot about it. There was no intentional or fraudulent withholding of said information from the plaintiff as the court has earlier indicated. However, the statutory scheme, and the regulatory scheme resulting therefrom, developed by the Department of Environmental Protection required that the transferors such as the defendants herein notify the transferee, such as the plaintiff herein, of the existence of said tanks, and the law does not excuse a faulty memory under this scheme. Said regulation, Department of Environmental Protection Regulation 22-449 (f)1 provides that no owner or operator shall transfer ownership, possession or control of any new or existing facility without full disclosure to the transferee of the status of the facility with respect to compliance with the regulations at least 15 days prior to the transfer. Such disclosure shall include an up-to-date copy of information submitted to the commissioner pursuant to sub-section D.
At the time of the transfer, due to the total failure of the defendants to recall the existence of said facility, the regulations concerning notification to the Department of Environmental Protection of the existence of such facility had never been complied with. Upon notification thereafter, the defendants readily complied with requisite notice requested by the Department of Environmental Protection. Testimony by an Environmental Department Employee indicates that they were satisfied with the notice thereafter filed by the defendants and have taken no further action, and do not anticipate taking any further enforcement action.
Further, the prior owner — defendant had not complied with DEP regulation 22a-449 (d)-1(d)(4) which provides that by May, 1986, the owner or operator of an abandoned or temporarily out-of-service facility shall notify the Commissioner of the location, type and capacity of such facility and the date it was abandoned or removed from service.
The court finds that these two tanks represent CT Page 4550 under said regulation an existing facility which means a facility the installation of which began prior to the effective date of these regulations and that it is a facility because it constituted a portion of a system of inter-connected tanks which were designed to be used for the storage of petroleum liquids and said system was a non-residential use. D.E.P. Regulation Sec. 22a-449 (d)-1(a). Said abandoned facility also qualified as a temporary out-of-service facility because no regular filing or drawing was occurring. Ibid. More simply put, this court concludes under the statutory and regulatory scheme, the owner of these premises was required to notify the Department of Environment Protection of the existence of the tanks prior to May 1986, D.E.P. Regulation Sec. 22a-449 (d)-(d)(4) and hey failed to do so. Under the other regulation previously cited, D.E.P. Regulation 22a-449 (d)-1-(d)(1), the owner was required to notify the transferee — plaintiff at least 15 days prior to the transfer, which the defendant owner failed to do.
The plaintiff herein claims consequential damages and the remedy of rescission.
The evidence establishes that the plaintiff incurred expenses in the testing of the residential water supply in the amount: of $2,210. and the court finds that this represents a non-speculative special damage. The other major item of damage claimed by the plaintiff is based upon testimony of an eco-audit engineer that a complete survey of the property to determine the existence of contamination will cost between $10,000 and $30,000. The court concludes that this claim of damages is so speculative that it cannot be allowed. There has been no testing or preliminary testing of the grounds on this property to determine the existence or any reasonably probable foundation to believe that there exists any degree of contamination. After notification the defendants, former owners, at their expense came back upon the property with the concurrence of the plaintiff and removed the two tanks in question. From the evidence the court finds that one tank was dry and that the other tank contained some sort of sludge. There is no evidence from which the court can find that there was any leaking of any substance from either of these tanks.
The engineer further talked about the existence or a floor drain in one of the bays of the six bay barn but that provides no basis for this court to conclude that there was any other drainage or dumping of any noxious substance on this property at any time in prior history of the property. CT Page 4551
The surviving claim for relief of the plaintiff in this matter concerns the claim for relief of rescission of the transaction. The property in question contains a farm house residence constructed around 1875, and therefore presumptively has historic value. The plaintiff prior to their having been informed of any problems with the property as previously discussed herein have introduced evidence that they have expended approximately $20,000 on alterations and/or alleged improvements to the property. There has been presented to this court no evidence whatsoever of any increase in value to the property by virtue of the work done up it by the plaintiff and accordingly, the plaintiff cannot recover damages from the defendants on account of claimed improvements made on a theory of unjust enrichment. Bolmer v. Kocet, 6 Conn. App. 595, 612 et seq. (1986).
The law does not permit this court to speculate as to whether or not any work done on the property constitutes an improvement or constitutes a detrimental depreciation of value by virtue of destruction of any historic value that this structure may have had.
The issue remaining before this court for decision is whether or not the remedy of recission ought to be made available to the plaintiff herein.
The plaintiff-purchaser is a member of the class of prospective purchasers intended by the statutory and regulatory scheme to be protected. Regardless of the negligent and/or non-intentional failure of the defendants to notify and otherwise give notice to the plaintiff of the existence of these underground tanks, the court finds that the defendants failed to comply with their legal obligation under said scheme. The said negligent concealment and/or failure to comply with the cited regulations is established by clear and convincing evidence.
Said statutory and regulatory scheme provides therein no statutorily mandated remedy for the class of persons to be protected, such as the plaintiff herein. This court concludes on that basis, and on the premise that damages are inappropriate herein, that the remedy of rescission is affordable to the plaintiff herein.
Damages are inappropriate because they are speculative in nature. Whether this plaintiff will be able to obtain conventional financing because of the statutory super lien potential liabilities that may attach to any transferors of this property merely adds to the speculative CT Page 4552 nature of the damages that do or may flow from the failure of the defendants herein to comply with said scheme. Accordingly, the judgment may enter in favor of the plaintiff as against the defendants to recover $2,210. damages and an order of rescission of said real estate transfer is entered.
Counsel for the plaintiff is directed to submit to the court for its approval and execution an appropriate order to implement the remedy of rescission granted to the plaintiff herein.
It is so ordered.
HIGGINS, J.