[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
I. PROCEDURAL BACKGROUND.
The plaintiff as pro se commenced this action on February 16, 1994, against the corporate defendant, United Technologies Corporation, and eight individual defendants alleging ten CT Page 10186 separate counts in his original complaint against the collective defendants based on his termination from UTC in January of 1994. On April 21, 1994, the defendants filed their first Request to Revise the plaintiff's complaint, to which the plaintiff responded on May 2, 1994. On May 24, 1994, plaintiff submitted his Revised Complaint B. Subsequently, on June 6, 1994, the defendants submitted their Second Request to Revise, consisting of sixty-six separate requests. By order of the court (Berger, J.) on June 30, 1994, thirty-four of the requests were granted, eighteen of the requests were denied, and fourteen others were granted in part, deleted, or withdrawn. Pursuant to that order, the plaintiff filed his Revised Complaint D, dated July 6, 1994.[1]
On July 26, 1994, the eight individual defendants filed a Motion to Strike, which is the subject of this memorandum of decision. On that same date UTC, the corporate defendant, filed its third Request to Revise as to plaintiff's Revised Complaint D. That matter is scheduled to be heard by this court at a later date.
The individual defendants' Motion to Strike is broken down into eleven separate arguments, each argument addressing a specific paragraph or multiple paragraphs in plaintiff's Revised Complaint D. Both the individual defendants' Memorandum in Support of the Motion to Strike and the plaintiff's Memorandum in Opposition to the Motion to Strike addressed the motion similarly, and the court during oral argument on the motion and its attendant objection proceeded in the same fashion. In keeping with this format, this court's memorandum of decision will be broken down that way as well.
II. LAW
A motion to strike is the appropriate motion to challenge the legal sufficiency of a pleading. Ferryman v. Groton,212 Conn. 138, 142 (1989). Section 152 of the Practice Book states in full:
 Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim, or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted, or (2) the legal sufficiency of CT Page 10187 any prayer for relief in any such complaint, counterclaim, or cross complaint, or (3) the legal sufficiency of such complaint, counterclaim, or cross complaint, or any count thereof, because of the absence of any necessary party, or (4) the joining of two or more causes of action which cannot properly be united in one complaint, whether the same be stated in one or more counts, or (5) the legal sufficiency of an answer to any complaint, counterclaim, or cross complaint, or any part of that answer including any special defense contained therein, that party may do so by filing a motion to strike the contested pleading or part thereof.
In reviewing and deciding a motion to strike, the court is not permitted to consider factual representations made at oral argument nor may it accept affidavits or other documentary proof in support of the motion. The facts alleged must be construed in a manner most favorable to the pleader. Amodiav. Cunningham, 182 Conn. 80, 82 (1980). Thus, a pleading that "on its face is legally insufficient" is subject to a motion to strike, even though facts may exist which, if properly pleaded, would establish a cause of action upon which relief could be granted. Baskin's Appeal from Probate, 194 Conn. 623, 640
(1984). A motion to strike raising any claims of legal insufficiency shall separately set forth each such claim and shall distinctly specify reason(s) for each such insufficiency. Practice Book, § 154. Board of Education v. Dow Chemical Co.,40 Conn. Sup. 141, 142 (1984).
III. DISCUSSION
A. Contract claims.
1. In General
As a threshold matter, the individual defendants contend that there is no employment relationship between the individual defendants and the plaintiff. To substantiate this contention, they note that the plaintiff has nowhere in his compliant alleged that these individual defendants had an employer/employee relationship with him. Consequently, they argue since there is CT Page 10188 no such relationship and the individual defendants are not the employer of the plaintiff, the plaintiff can have no cause of action against these individual defendants sounding in wrongful termination based on either an employment-at-will basis or an implied contract basis. The defendants cite no authority for this contention, claiming no case law exists in Connecticut for the very reason that there is no legal theory regarding an employee's case against another employee or other employees based on an employment relationship. The defendants claim this is true because the plaintiff has not alleged nor can he allege that any of these defendants was the employer of the plaintiff.
To counter this argument the plaintiff states that individual defendants do not require an employer/employee relationship. He then cites numerous cases, only two of which are Connecticut cases and neither of which is on point. Both theMurray v. Bridgeport Hospital case at 40 Conn. Sup. 725 (1984) and Bowman v. Grolsche Bierbrouwerij, 474 F. Sup. 725 (D. Conn. 1979) deal with negligence and purported tortious conduct.
This court is unaware of any statute or case law that would in fact validate plaintiff's claim of an employment relationship with any of the individual defendants listed. This court has reviewed the plaintiff's complaint carefully, with particular attention to five separate arguments the plaintiff makes all sounding in contract. The court will now turn to each of these separately.
2. Public Policy Exception to At-Will Employee
In counts 1, 9, 17, 25, 34, 40, 46, and 51, the plaintiff claims the individual defendants wrongfully terminated him. The plaintiff claims that he and the individual defendants were by public policy bound to comply with UTC's contractor code of ethics and programs run by the ombudsman. In none of the allegations in any of the aforementioned counts does the plaintiff allege that he and any of these individual defendants had an employee/employer relationship nor does plaintiff allege that any of these individual defendants were his employer. In fact, each of these counts refers to paragraph A1 of the plaintiff's complaint (either directly or making reference to paragraph 1.1 of count one which refers back to paragraph A1). Paragraph A1 specifically states in pertinent part, "In this complaint all individual defendants were UTC employees." Clearly, if the plaintiff himself alleges that CT Page 10189 these individual defendants are employees of UTC, there can be no employee/employer relationship. Without such a relationship, there can be no wrongful termination by these individual defendants as to the plaintiff. Accordingly, the court grants the defendants' Motion to Strike counts 1, 9, 17, 25, 34, 40, 46, and 51.
3. Public Policy Favoring Due Process
In counts 26 and 27 the plaintiff alleges as to the defendant Poythress that there is a recognized public policy favoring due process of law where such is implied by contract or notice of misconduct meriting dismissal. Again, for the court to even reach the issue of whether such alleged public policy exists, there would have to be an employee/employer relationship between the defendant Poythress and the plaintiff. No such relationship is alleged in either count, and as previously stated, plaintiff alleges in paragraph A1 that Mr. Poythress as one of the individual defendants is an employee of UTC. Accordingly, the Motion to Strike as to counts 26 and 27 is granted.
4. Violation of § 31-51q — Protected Speech
In counts 2, 10, 18, 28, 35, 41, 47, and 52 the plaintiff alleges that the individual defendants violated § 31-51q of the Connecticut General Statutes. That statutory language states in part, "Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment of the United States Constitution or § 3, 4 or 14 of article first of the constitution of the state, . . . shall be liable to such employee for damages caused by such discipline or discharge . . . ." The court once again can not even reach the issue of whether the speech of which the plaintiff complains falls within the protection of the statute if he has not established that an employer/employee relationship exists here. The statute specifically talks about "an employer". No allegation of an employer/employee relationship has been pled by the plaintiff in any of the counts above-mentioned. Plaintiff has admitted in paragraph A1 of his complaint that all of these individual defendants are employees of UTC. Therefore, these, individual defendants could not have violated the statute cited by the plaintiff. The defendants' Motion to Strike counts 2, 10, 18, 28, 35, 41, 47, and 52 of plaintiff's Revised CT Page 10190 Complaint D is granted.
5. Breach of Implied Contract — Denial of Promotion
The plaintiff's next contract claims allege breach of contract. Defendants move to strike counts 3, 11, 19, 29, and 36, arguing that there is no implied contract based on the denial of a promotion. Once again, and as the defendants accurately point out, this court can not reach the issue of determining whether or not there is an implied contract between the plaintiff and these individual defendants without first determining whether or not there is an employment relationship between plaintiff and these individual defendants. In the five counts just cited, the plaintiff does not allege that there is any employment relationship between him and any of these defendants. He does not allege that any of these defendants are his employer. Referring back to his original complaint, he alleges that these defendants are all employees, just as he is an employee. Having failed to establish this necessary threshold, the plaintiff can have no implied employment contract with these defendants. The defendants' Motion to Strike counts 3, 11, 19, 29, and 36 is granted.
6. Termination Is Breach of Implied Contract
Similarly, in counts 4, 12, 20, 30, 37, 42, 48, and 52 the plaintiff alleges that all the individual defendants are liable for breaching an implied employment contract with him when they terminated him in violation of certain termination policies. As previously stated by this court, in order for the plaintiff to survive a motion to strike these counts, there must be allegations that these individual defendants were the employer of the plaintiff. Plaintiff has not made this allegation in any of these counts and has, in fact, in Count A1 made a contradictory allegation that all these defendants were also employees. The court, therefore, grants the Motion to Strike as to these counts.
7. Violation of § 31-71e — Withholding of Wages
Plaintiff's final contract claim set out in count 5 is that the individual defendant Kuhn violated § 31-71e of the Connecticut General Statutes by wrongfully withholding his wages. That statute reads in part: "No employer may withhold or divert any portion of an employee's wages. . . ." Once again, CT Page 10191 in order for this statute and its attendant penalties to be applicable, Kuhn would have to be the plaintiff's employer. Plaintiff has not alleged this. On the contrary, plaintiff has alleged in paragraph A1 of his complaint that Kuhn is an employee of UTC. On that basis, the court grants the defendants' Motion to Strike as to count 5.
B. Other Claims
1. Unintentional Infliction of Emotional Distress
In counts 6, 13, 21. [21,] 31, 38, 43, 49, and 54, the plaintiff claims that each of these eight individual defendants unintentionally inflicted emotional distress upon him. As set out in Montinieri v. Southern New England Tel. Co., 175 Conn. 337
(1978), in order to state a claim of unintentional infliction of emotional distress, there must be an allegation that the defendants knew or should have known that their action would involve an unreasonable risk of causing distress that could cause illness or bodily harm. As further delineated inGTT Corp. v. Ferris, No. 93 052 72 11, 1994 Conn. Super. LEXIS 631 at *5, the plaintiff must also provide factual allegations which illustrate why the risk of emotional distress should have been anticipated.
Having stated the law, the court will now review plaintiff's pleading to see if it accords with the law. The court only need look at count 6 since that count is repeated as the basis of the remaining counts dealing with this issue, counts 13, 21, 31, 38, 43, 49, and 54.
In count 6 plaintiff claims in paragraph 6.4 that "the defendant realized, or should have realized that his conduct which would effect on (sic) plaintiff the loss of consideration of promotion and compensation increase, the wrongful employment discharge and compensation loss, the loss of his social contact with friends and coworkers and the defamation of his good name involved an unreasonable risk of causing emotional distress, and that distress might result in illness or bodily harm."
While the court will concede that plaintiff's allegation as cited above is far from artfully phrased, this court does feel it satisfies the Montinieri standard. Plaintiff has alleged that these individual defendants knew or should have CT Page 10192 known that their actions would involve a risk of causing distress that could cause illness or bodily harm. Paragraph 6.1 refers back to paragraphs B10 — B12 which summarize, though again not very concisely, plaintiff's distress. This includes the loss of his job, a valuable asset to the plaintiff, and the attendant loss of social relationships with his coworkers. Thus, the GTT Corp. standard has also been satisfied. Defendants' Motion to Strike counts 6, 13, 21, 31, 38, 43, 49, and 54 is hereby denied.
2. Reckless and Wanton Misconduct
Plaintiff next claims in counts 7, 14, 22, 32, 39, 40, 50, and 55 that the individual defendants have acted with reckless and wanton misconduct toward him. Plaintiff claims that if negligence is recognized in this state as a tort, then reckless and wanton misconduct is also recognized. The plaintiff is partially correct; Connecticut does recognize the concept of reckless and wanton misconduct. However, as the defendants point out in their legal memorandum, this concept is one which applies to a remedy, not to a separate cause of action. Plaintiff's reliance on the cases he cites is misplaced. InMooney v. Wabrek, 129 Conn. 302, 307 (1942), the court recognizes such conduct, but specifically refers to it as "a ground of recovery." This is in conformance with the earlier case ofBrock v. Waldron, 127 Conn. 79 (1940), upon which plaintiff also relies. ("The only effect of finding wanton misconduct would be to permit recovery not withstanding contributory negligence.")
The defendants argue and this court agrees that allegations of reckless and wanton misconduct form a basis for punitive damages. It is that level of blame which a plaintiff has to prove to be entitled to recovery under certain statutes. (See for example, § 14-295 C.G.S.) Finally, this court is unaware of and plaintiff has not cited any case which deals with reckless and wanton misconduct in an employment action. In conformance with this analysis, the court grants the defendants' Motion to Strike counts 7, 14, 22, 32, 39, 40, 50, and 55 of plaintiff's Revised Complaint D as to the eight individual defendants only.
3. Unjust Enrichment
In counts 8, 15, 23, 33, and 45, the plaintiff claims CT Page 10193 that five individual defendants have been unjustly enriched (Kuhn, Morris, Garfinkel, Poythress and McAbee). His claim is that these individuals benefited when employees including the plaintiff, were mandated to take unpaid furlough days. Plaintiff's claim is an extension of his claim alleged in paragraphs 5 regarding illegal withholding of wages under § 31-71e of the statutes. This court has now stricken that paragraph determining that plaintiff's wages were not illegally withheld by the individual Kuhn when plaintiff was required to take unpaid furlough days as part of UTC's economic planning. Kuhn as an individual employee was not plaintiff's employer and did not, therefore, come under the statute.
The court is hard pressed to find that plaintiff has a cause of action for unjust enrichment based on plaintiff's having to take mandatory unpaid furlough days when plaintiff does not have any viable claim for illegal withholding of his wages. If plaintiff's wages were not illegally withheld by the individual defendant Kuhn (under § 31-71), how then could any of these five individual defendants been unjustly enriched? During oral argument on the motion, plaintiff asked the court to direct its attention to Burns v. Koellmer, 11 Conn. App. 375, (1987) and to Bolmer v. Kocet, 6 Conn. App. 595 (1985) which plaintiff claims allows an unjust enrichment claim in similar circumstances when there has been no finding of a cause of action for a § 31-71e violation.
Plaintiff's reliance on both of these cases to buttress his argument is misplaced. In Burns the court upheld a claim of unjust enrichment as to the plaintiff Burns against the defendant Koellmer because plaintiff served as defendant's manager of a tennis club and was never fully remunerated for the work that she did for the defendant. Here the plaintiff is claiming that these five individual defendants were unjustly enriched because they received bonuses which may have been part of money which was taken from his salary for unpaid furlough days. Plaintiff was not required to work on the furlough days. Consequently, he was not owed any money for unpaid time worked. Even assuming arguendo that unjust enrichment is a proper claim, plaintiff's fact situation is clearly inapposite to the facts in Burns.
In Bolmer, plaintiff had a contract with the defendants to subdivide their property with the understanding that once all local land use approvals were granted, the defendants CT Page 10194 would convey the property to the plaintiff for a certain price per lot. Some of the land use approvals were granted and defendants did not convey, claiming that all approvals were not forthcoming. Plaintiff claimed that defendants were unjustly enriched in that their property was now worth more money with the approvals which plaintiff had procured for them. As stated in Bolmer, "Unjust enrichment applies when justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract," citing Cecio Bros., Inc. v. Greenwich, 156 Conn. 561,564 (1968). That is clearly not the situation in the instant case. As this court has held in its striking of all of the contract counts which plaintiff alleged, there is no contract between the plaintiff and any of these individual defendants.
Plaintiff can not have a contract remedy when he has no contract with these people. Plaintiff can not have an unjust enrichment claim based on wages withheld when the court has already determined that there is no viable claim regarding withheld wages. On these bases, the court grants the individual defendants' Motion to Strike counts 8, 15, 23, 33, and 45 of the plaintiff's complaint.
4. Negligent misrepresentation
In count 56 the plaintiff claims that the defendant Furtado negligently misrepresented facts to him upon which he, the plaintiff, detrimentally relied. Plaintiff argues that Furtado knew of the danger that the plaintiff would suffer if plaintiff spoke with a higher authority regarding his concerns with certain company policy. Plaintiff claims that Furtado had a duty to convey this danger in writing on the form which plaintiff filled out requesting a conference with a higher company official.
The remainder of plaintiff's argument revolves around the confidentiality of the ombudsman program. Since plaintiff admits that he requested to speak to another individual about his concerns, and that he in fact did speak to defendant Morris, plaintiff himself waived any privilege to confidentiality that he would have had with defendant Furtado.
Both the plaintiff and the defendants cite D'Ulisse —Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, CT Page 10195 219 (1987) which sets out the requirements for a claim of negligent misrepresentation. The plaintiff must allege that he was given false information by the defendant and that he relied on that false information to his detriment. Plaintiff's allegations do not fulfill these two requirements. He claims that Furtado should have told him that "his confidentiality would be blown" if he spoke to someone in higher authority. At that point plaintiff knowingly waived his privilege of confidentiality and admits in paragraph 56.4: "Defendant replied that once you request to speak with someone in DIALOG your confidentiality is blown and that some managers are vindictive but it is hard to prove." Where is the misrepresentation?
This court agrees with the defendant Furtado that plaintiff has not stated a claim upon which relief can be granted as to count 45 of his complaint. The Motion to Strike as to that count is granted.
5. Slander
Finally, the defendants move to strike counts 16 and 24 against the individuals Morris and Garfinkel. Plaintiff alleges these defendants slandered him. According to plaintiff's allegations, both Morris and Garfinkel spoke of their dissatisfaction of plaintiff to other UTC managers. For a claim of slander to be actionable, plaintiff must allege that there was publication. Strada v. Connecticut Newspapers, Inc.,193 Conn. 313, 316 (1984). Publication in the corporate environment necessitates communication outside of the corporate domain. Cohen Co. v. Dun Bradstreet, Inc.,629 F. Sup. 1425 (D. Conn. 1986). Nowhere in counts 16 or 24 does plaintiff allege that publication took place aside from between and among UTC managers. On this bases, the defendants' Motion to Strike these two counts of plaintiff's Revised Complaint D is granted.
SUSAN B. HANDY JUDGE, SUPERIOR COURT